## FILLIPONE v. UNITED STATES.

(Court of Appeals of District of Columbia. Submitted November 8, 1924. Decided December 1, 1924.)

No. 4069.

1. Witnesses ⬿305(1)—Witness may elect to give incriminating testimony.

A witness cannot be compelled to give incriminating testimony, but may elect to give such testimony, in which case, if material and relevant, the jury may weigh and consider it with the other evidence.

2. Witnesses ⬿305(1)—Incriminatory statements, which witness chooses to make, cannot be rejected by court, if material and relevant.

Incriminating statements, if material and relevant, and if witness chooses to make them, cannot be rejected simply because they are incriminatory, or because the court does not believe them, or incorrectly regards them as mere insinuations, which would produce a bad effect on the jury.

3. Bastards ⬿70—Credibility of witness for jury, and not court.

Whether witness was telling the truth was a matter for the jury, and not for the court, to decide.

4. Bastards ⬿71—Instruction charging jury not to consider incriminating testimony voluntarily given by witness held erroneous.

In bastardy proceeding, instruction charging jury not to consider testimony that witness had had intercourse with the prosecuting witness at certain time, given after court had admonished witness that he could not be compelled to give incriminating testimony, held error.

5. Bastards ⬿35—Proceeding held within jurisdiction of juvenile court of District of Columbia.

Under Act June 18, 1912, § 2, the juvenile court of the District of Columbia had jurisdiction of bastardy proceeding.

6. Bastards ⬿50—Information properly presented by corporation counsel of District of Columbia.

Under Act March 19, 1906, § 12, information in bastardy proceeding was properly presented by corporation counsel of District of Columbia.

7. Bastards ⬿63—Child should not be exhibited as evidence of resemblance to putative father, unless old enough to possess settled features and other corporal characteristics.

Where issue is paternity of child, the child, unless old enough to possess settled features and other corporal characteristics, should not be exhibited to jury as evidence of resemblance or lack of resemblance to the putative father, and resemblance, to be of evidentiary value, should be the reproduction of physical characteristics peculiar to the alleged father, and should be so striking as to leave no reasonable doubt as to its existence.

8. Bastards ⬿71—Where child is exhibited to establish resemblance, jury should be instructed as to evidentiary value.

In bastardy proceeding, in which paternity is denied, and child is exhibited to establish resemblance, jury should be instructed that, to give resemblance evidentiary value, it should be a reproduction of a physical characteristic peculiar to the alleged father, and should be so striking as to leave no reasonable doubt as to its existence.

Writ of Error to Juvenile Court of District of Columbia.

Bastardy proceeding by the United States against Rocco Fillipone. Judgment against defendant, and he brings error. Reversed and remanded.

J. S. G. Gallagher and Clinton Robb, both of Washington, D. C., for plaintiff in error.

F. H. Stephens, L. B. Perkins, and A. H. Bell, Jr., all of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. This is a writ of error directing the judge of the juvenile court of the District of Columbia to send to this court the record in the case of United States v. Rocco Fillipone, suit No. 33872, for the correction of any errors which may have occurred in the proceedings and for the doing of that which of right ought to be done.

On the 11th of May, 1922, the corporation counsel for the District of Columbia presented an information to the juvenile court of the District, charging that Rocco Fillipone, the defendant, was the father of a male child, begotten by him of the body of Marcelle Viacara, and that said child was born a bastard, and was alive and a bastard at the time of the filing of the information.

A motion was made to quash the information on the ground that the offense charged was one involving moral turpitude and might subject the defendant to punishment at hard labor if found guilty. The motion was denied and to that ruling the defendant excepted, whereupon the defendant pleaded not guilty, and the case after trial was submitted to a jury duly impaneled, which on February 8, 1923, found the defendant guilty as charged. Motions for a new trial and in arrest of judgment were denied, and the defendant was sentenced on March 12, 1923, to give bond in the sum of $1,000 to secure the payment of $5 per week to Marcelle Viacara for the support of her child until it became 14 years of age, payments to cease if the child died before that time. This writ of error was thereupon taken out for a review of the proceedings had in the case.

On the trial Marcelle Viacara, the prosecuting witness, testified that she was born on the 20th of May, 1902, and that she first met the defendant, Rocco Fillipone, when she went with her employer to Fillipone's shop to have shoes repaired in the latter part of August, 1920; that after that date she met Fillipone many times; that on the 29th of March, 1921, she gave up her employment at the Navy Yard, and with her mother and two brothers began to take her meals at the house of Fillipone, who, through the "Police Woman's Bureau," secured Marcelle a position in a department store; that she had sexual relations with Fillipone twice in the latter part of April, 1921, and for the first time in the cellar, when Fillipone's wife sent her there to get vinegar. On cross-examination the prosecuting witness stated that she took breakfast every morning with Eugene Familetti, the brother-in-law of Fillipone, prior to going to work; that they were friends, and hugged and kissed each other; that Familetti, in the first part of April, 1921, tried to have sexual intercourse with her, but that she threatened to cry out, and that he then desisted; that on the 14th or 15th of October, 1921, she wrote to Familetti the following letter:

"You tried to frighten me you cannot if I don't see anything Tursday. I don't ask you non more for save its name. I ask the justice to do what she gat do. Don't thing it get only 6 monts now you mine 6 years and is wife is children is business is name ruin and manyting can be discovered if it gat any money. it gat the houses. I don't care what it happen. I when $500 dollars or the justice if I go to the law is cost you moor money and the dishonneur. I don't care what it happen. I when the money for Turday, 20 Octobre. I don't when whait moor long. it not have to abuse of my weakness and to it is last call and you the time is choost marque my word. I don't play non moor. If I don't gat anything I get the flaisire to the hem and prison. And you swechard carie the same name. Send the money. I don't go to your home.

"M. V."

She said that she wrote that letter after Familetti had asked her how much money she wanted; that on the 20th of May, 1921, Eugene gave her his picture and also a gold necklace, which she told Fillipone she had received from Ivan's sister; that she discovered that she was in a delicate condition in May, 1921; and that her child was born on the 15th of January, 1922.

Eugene Familetti testified on behalf of the defendant that from the 20th of March until May, 1921, Marcelle Viacara and her

people took their meals at the house of Rocco Fillipone; that Marcelle and himself took breakfast together in the kitchen between 6 and a quarter after 7 in the morning; that his sister came down about 8:30, and his brother-in-law about 9:30, and that Miss Viacara's people came down between 8:30 and 9 o'clock; that the witness and Marcelle were very friendly, and that they begun to kiss each other about a week after Marcelle Viacara came to Fillipone's; that the morning she got her job she came there about 6:30 and said, "Now, we can enjoy ourselves, so we start fooling." The witness then, in the face of warnings by the court as to the giving of testimony which might incriminate him, testified to intimacies and gross improprieties, tending to show that he and Marcelle Viacara had been guilty of sexual misconduct, and finally admitted that he had sexual intercourse with Marcelle.

The court was apparently of the opinion that Familetti's testimony as to his relations with Marcelle was a mere insinuation, and instructed the jury as follows:

"The jury are again instructed to disregard this as a matter of evidence against the girl. No man should be permitted to come into court, and upon questioning by his attorney, or by the attorney for the other party, produce an effect on the minds of the jury of the guilt of the other person. The jury are instructed to disregard it. This cannot be considered as evidence against the girl. That would open up a very dangerous line, if a person could go on the stand and through an insinuation produce such an effect on the minds of the jury. The jury are not to consider that this man, from his testimony, had sexual relations with the complainant. We will stand on that decision, and you can note an exception. As a matter of law it is not admissible evidence. There has been no lawful evidence that this man had sexual relations with this girl. As a matter of fact the court is ruling that there has been no evidence to show that they had sexual intercourse."

Counsel for defendant objected to the instructions cited and took his exception thereto. He also moved that a juror be withdrawn, which motion was denied, and an exception taken to the ruling.

The testimony of the prosecuting witness is convincing that her relations with Familetti were something more than friendly or platonic. True enough, she testified that she repulsed Familetti when he attempted to have sexual intercourse with her. Familetti's testimony, however, tended to show that he and Marcelle indulged in familiarities which were something more than mere expressions of friendly regard, and which, if accepted as true, tended to prove that both were guilty of sexual misconduct. Indeed, in answer to a question put by the court, and after repeated warnings not to incriminate himself, Familetti testified positively that he had sexual intercourse with the prosecuting witness.

[1, 2] If the statements made by Familetti under oath be accepted as true, he and Marcelle began to misconduct themselves early in April, 1921; and his testimony is open to the construction that in April their misconduct culminated in actual sexual intercourse. A witness cannot be *compelled* to give testimony which will incriminate him, but if he elects to give such testimony he may do so, and if it be material and relevant to the issue the jury may weigh and consider it with the other evidence in the case. Incriminatory statements, if they are material and relevant, and if the witness chooses to make them, cannot be rejected simply because they are incriminatory, or because the court does not believe them, or incorrectly regards them as mere insinuations, which would produce a bad effect on the jury.

[3, 4] Whether Familetti told the truth or was bearing false witness was the function of the jury, and not that of the court, to decide. As the testimony of Familetti was material and relevant, and as the jury had the right to weigh and consider it in reaching a conclusion as to the paternity of the child, the court erred in giving the instruction hereinbefore quoted.

[5, 6] The point made by counsel for the appellant that the juvenile court of the District of Columbia was without jurisdiction of the case, and that the corporation counsel was without authority to present the information against the defendant, was not well taken. Section 2 of the Act of June 18, 1912 (37 Stat. 134), confers jurisdiction on the juvenile court in such cases as that presented by the writ, and section 12 of the Act of March 19, 1906 (34 Stat. 73, 75), expressly provides that "prosecutions in the juvenile court shall be on information by the corporation counsel or his assistant."

The defendant was not sentenced to hard labor, and the judgment pronounced was not beyond the power of the court to render.

[7, 8] Where the issue in a case is the paternity of a child, the child, unless it is old enough to possess settled features and other corporal characteristics, should not be exhibited to the jury as evidence of resemblance or lack of resemblance to the putative father. Resemblances of infants and very young children to one parent or the other are easily fancied. Consequently, when paternity is denied, and the child is exhibited to establish resemblance, the jury should be instructed by the court that, to give a resemblance evidentiary value, it should be the reproduction of physical characteristics peculiar to the alleged father, and should be so striking as to leave no reasonable doubt as to its existence.

The judgment appealed from is reversed, and the case remanded for a new trial.