NIMMO *v.* SIMS.

Opinion delivered February 4, 1929.

*Emmet Vaughan,* for appellant.

*J. R. Linder, O. E. Williams* and *Guy E. Williams,* for appellee.

HART, C. J. Frank Nimmo prosecutes this appeal to reverse a judgment of the circuit court against him in a proceeding to affiliate a bastard child and to compel him to aid in the support of said child. The proceeding was begun in the county court, and appealed to the circuit court. The record shows that the trial in the circuit court was had on the 7th day of September, 1928.

Gladys Sims was the prosecuting witness. According to her testimony, she was twenty years of age in January, 1928, and was a single woman. She was the mother of a child, which she held in her lap, and which was born near Cabot, in Lonoke County, on October 4, 1927. His father was the defendant, Frank Nimmo, who was a married man. He began going with the prosecuting witness in March, 1926. She had sexual intercourse with him on the 29th day of December, 1926, and on the first, second, third and fourth days of January, 1927. He slept with her during all these nights, and was the father of her child. She had never had intercourse with any other man during her whole life.

The defendant admitted having intercourse with the prosecuting witness in December, 1926, but denied such intercourse on the first, second, third and fourth days of January, 1927. He also admitted writing to her three love letters during the early part of 1927, which letters had been introduced in evidence as exhibits to the testimony of the prosecuting witness.

Harry Eaton was also a witness for the defendant. According to his testimony, he went to the room of the prosecuting witness two different times during the latter part of December, and had intercourse with her. He paid her two dollars each time, and the last time was right close to Christmas.

The evidence of the prosecuting witness was sufficient to warrant the jury in rendering a verdict against the defendant. No corroboration of her testimony was necessary. Proceedings to affiliate a bastard child are of a civil nature, and the jury may find that the accused is the father of the child upon the testimony of the mother alone. *Qualls* v. *State,* 92 Ark. 200, 122 S. W. 498; *Belford* v. *State,* 96 Ark. 274, 131 S. W. 953; and *Scott* v. *State,* 173 Ark. 625, 292 S. W. 979.

It is urged that the judgment should be reversed because the circuit court erred in allowing the prosecuting witness to exhibit her child to the jury. The child was sitting in her lap during the time that she was testifying, and she was asked if the child in her lap was the one which she accused the defendant of being the father of. She replied in the affirmative, and, before the case was submitted to the jury, the child was formally exhibited to it, that they might examine it to see if there was any resemblance between it and the defendant. As we have already seen, the child was born on the 4th day of October, 1927, and the trial was had on the 7th day of September, 1928. This court has held that it is not error in a bastardy case to permit the child to be exhibited to the jury. This is done for the purpose of enabling the jury to view the child and determine whether there is any resemblance between the features of the child and

those of the putative father, or whether there may be other corporal traits of sufficient development to permit a comparison between them and those of the defendant. *Land* v. *State,* 84 Ark. 199, 105 S. W. 90, 120 Am. St. Rep. 25, and *Hogan* v. *State,* 170 Ark. 1143, 282 S. W. 984. This rule seems to be supported by the weight of authority, and is admissible for what the jury may think it may be worth in attempting to fix the responsibility for the paternity of a bastard child.   Case-note to 40 A. L. R., at page 97.

It is next urged that the court erred in refusing to permit the introduction of testimony tending to prove acts of intercourse of the mother of the child with others than the defendant.   The court did permit the introduction of the testimony of Harry Eaton, the only witness who was offered by the defendant, to testify that he had intercourse with the prosecuting witness on or about the time of conception.   This court has held that the introduction of such testimony is admissible when confined to a period of time when, in the course of nature, the child could have been begotten, but that testimony as to acts of intercourse had at other times was not admissible.   The court also said that such testimony was not competent to impair the credibility of a witness by proof of specific acts of immorality.   *Belford* v. *State,* 96 Ark. 274, 131 S. W. 953, and *Thomas* v. *State, ante,* p. 381.   Testimony as to acts of intercourse with other men at the time not within the period of conception would lead to an investigation of collateral matters, and might take the jury away from the real issue to be determined by it, which is the paternity of the child.

Finally, it is insisted that the court erred in allowing the prosecuting witness to exhibit to the jury the love letters which had been written by the defendant to her. The record shows that, after the prosecuting witness had testified that the defendant was the father of the alleged bastard child, and that he had first commenced going with her two years before, she was asked if he was not a married man, and had not made love to her.   Objection was made to this last testimony, and counsel for the de-

1056

fendant then admitted that the defendant was a married man and that he had intercourse with the prosecuting witness within the period of gestation. The defendant denied having intercourse with her on the four days in January, 1927, testified to by the prosecuting witness, or that he slept with her on these nights. Under these circumstances we think the testimony was admissible. His love letters might be considered by the jury for what they were worth as affecting the credibility of the prosecuting witness as to the number of times the defendant had slept with her on or about the time of conception, and as shedding some light as to the paternity of the child.

We find no reversible error in the record, and the judgment will therefore be affirmed.