### GOODYEAR SERVICE, Inc., v. PRETZFELDER.

### No. 6570.

United States Court of Appeals for the District of Columbia.

Decided April 27, 1936.

Rehearing Denied May 20, 1936.

Cornelius H. Doherty, of Washington, D. C., for appellant.

Alvin L. Newmyer, David G. Bress, and Leon Pretzfelder, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

This is an appeal from a judgment of the lower court for damages for injuries sustained by appellee in an automobile accident.

The appellee was plaintiff below and in her declaration alleged that the defendant, Goodyear Service, Inc., a corporation, on March 10, 1934, in the District of Columbia caused to be operated a certain automobile truck for the transportation of tires, and employed a certain chauffeur as its driver, and that on that day the plaintiff was walking across Woodley Place, a street within the city of Washington, D. C., from the east to the west curb, and that defendant's driver in the operation of its truck carelessly and negligently, at an excessive rate of speed and without giving warning of its approach, caused the truck to strike the plaintiff with great force, whereby she sustained serious injuries and for which she prayed judgment in damages.

The defendant company for its pleas admitted the ownership and operation by its employee of the truck named in the declaration and admitted also that the collision occurred with the plaintiff on the 10th day of March, 1934, but denied that it was caused through the negligence or carelessness of the driver of the automobile, and alleged that at the time and place stated in the declaration the plaintiff was guilty of negligence which caused the injuries, in that she failed to exercise reasonable care for her own safety; and that she violated the Traffic and Motor Vehicle Regulations of the District of Columbia, being Article II, § 2, Paragraph (b), and reading as follows:

"Vehicles shall have the right of way between crosswalks and between street intersections."

The defendant further alleged that the employee driver was proceeding north on Woodley Place, between the crosswalks, and it then and there became the duty of the plaintiff to use reasonable care to ascertain whether it was safe and proper to cross the street at the time and place, and to give the truck the right of way; but that plaintiff failed to use such reasonable care and that the negligence of the plaintiff was the cause of any and all injuries sustained by her by reason of the collision described in the declaration.

Issue was joined on June 20, 1934, and on June 3, 1935, a motion was made by plaintiff to set the trial date for the case, and on June 4, 1935, a motion was made by defendant to pass the case upon the ground stated in an affidavit filed as of that date. In the affidavit it was stated that on May 17, 1935, an operation was performed upon Mr. Doherty, counsel for the defendant, and that he had since that date been confined to the hospital and was then at home under the care of his physician, Dr. Zinkhan, and would not be in condition to return to his professional duties until after the 1st of July, 1935. Upon the same day the court denied the motion above set out to pass the cause for the term, and the trial of the cause was continued for one week. On June 12, 1935, the defendant moved the court to continue the cause for a month due to the illness of Mr. Doherty. An affidavit was filed at the same time verified by Mr. Doherty, that owing to the operation performed upon him he would be unable to enter upon a trial of the case and applied for a continuance of at least another month. An affidavit was also filed in the cause signed and verified by Dr. Zinkhan to the effect that on March 17, 1935, he performed a double Caldwell-Luc operation on Mr. Doherty who since that date has been under his professional care; that Mr. Doherty is still unable to attend to his professional duties, and, at affiant's insistance, due to the result of a severe, chronic infection, he must refrain from all professional activities for at least another month.

On June 12, 1935, upon consideration of the motion filed for a continuance it was denied. Thereupon the cause was tried to the jury resulting in a verdict for $7,000 for the plaintiff and judgment was accordingly entered thereon. The present appeal was then taken.

The appellant assigns as error the ruling of the trial court denying appellant's motion for a continuance because of the illness of his attorney, supported by the affidavits of the attorney and his physician. We cannot sustain this assignment. It is the conceded rule that such a motion is submitted to the sound discretion of the court and that the court's ruling thereon will not be disturbed except for an abuse of such discretion. In the present case it appears that the attorney in question was present in court at the time when the court passed upon the motion and that after the court's ruling, he took part in the trial of the case and pursued it with diligence to its close. And, moreover, because of a continuance of ten days granted in answer to his prior motion, counsel could have secured the assistance of other counsel for the trial; and the granting of a continuance for one month, as requested, would have resulted in the postponement of the trial of the cause until the following term of the court. Wherefore, we feel that the ruling of the lower court upon this subject should not be disturbed. Isaacs v. United States, 159 U.S. 487, 16 S.Ct. 51, 40 L.Ed. 229; Fields v. United States, 27 App.D.C. 433; Moens v. United States, 50 App.D.C. 15, 267 F. 317; Hawes v. Clark, 84 Cal. 272, 24 P. 116; and Dale v. Beasley, 141 Ga. 594, 81 S.E. 849.

The appellant also assigns as error the ruling of the trial court denying its motion for a directed verdict at the close of the plaintiff's evidence and likewise at the close of all the evidence, upon the ground that plaintiff's claim was not supported by the testimony. This leads us to consider the evidence set out in the record.

It appears that the accident in question occurred at about 9:45 a. m. on March 10, 1934, in full daylight at a point on Woodley Place about sixty feet north of its intersection with Woodley Road. Woodley Place is a street running north and south and is about twenty-four feet wide. At the time in question, the plaintiff, who was then about seventy-two years of age, left her residence a short distance north of the place of the collision and walked down the east sidewalk of Woodley Place until she came to a point near the middle of the block where she started to cut diagonally across the street to reach the opposite sidewalk. At the same time the defendant's truck, driven by its chauffeur, was coming north on Woodley Place from the opposite side of Woodley Road, and after crossing the road it struck the plaintiff, rendering her unconscious and inflicting severe injuries upon her.

There were no corner traffic lights at the intersection of Woodley Road and there were no stop signs on Woodley Place at its intersection with Woodley Road.

The plaintiff testified that she left her home on the day in question at about 10 o'clock in the morning; that she walked south on the east side of Woodley Place, and started to cross to the west side before reaching the intersection of Woodley Place and Woodley Road; that she remembered a lady walking in front of her down the street, but did not know her; that when she came to the curb she looked and saw a truck coming north on Woodley Place on the west side of the street; that it must have been going seventy-five miles an hour; that there was no other traffic going her way; that after she stepped off the curb there was no use to look to the right or left and she looked straight ahead; that she always walks fast; that she was half way across the street, was ready to step up, when she was hit; that she did not hear any noise and did not see the car before it struck her.

Bernard German, aged twelve, testified that he was on the west side of Woodley Place, north of Woodley Road, looking for a boy friend, and was standing near a driveway in front of 2702 Woodley Place, which was about ninety feet north of the intersection of Woodley Place and Woodley Road; that he saw the truck when it was south of Woodley Road; that the first time he saw plaintiff she was in the middle of the roadway; that when the truck got to within fifteen or twenty feet of plaintiff the driver endeavored to swerve around her, and that when he first saw the truck, he believed that it was going faster than the street cars on Connecticut avenue, which he estimated to be about thirty miles an hour; that the position of the plaintiff at the time she was struck was beyond the middle of the street, more toward the west curb; that he did not recall the truck slowing down at all; that

the truck did not drag the plaintiff, but when the truck struck her she went through the air and landed by the lamp post, and that when the truck stopped it was on the left or west side of the street; that the driver of the truck was the only one on it and witness did not remember whether the driver was white or colored; that he did not see the truck strike the plaintiff and turned his eyes to another direction; that the driver of the truck did not move it after the collision; and that there were skid marks about six feet long behind it.

Witness Richard Shell testified that he came to the place in question after the accident and found the plaintiff lying in the street and saw the boy who was driving the truck and another lady standing in the street and he assisted in taking plaintiff to her home; that plaintiff was lying almost in the middle of the street and that the truck which struck her was right in front of her on the west side of the street; that the truck was at an angle toward the west headed north on Woodley Place. On cross-examination he stated that when he arrived at the scene of the accident the only persons whom he saw were the truck driver and another lady; that the front of the truck was on an angle facing northwest, but he did not know about the center of the east side of the street, or whether it was beyond it, and that he did not know whether the truck had been moved after the accident; that the truck when he saw it was about three or four feet behind the injured lady lying in the street.

Witness Louise Cheeks testified that she was sweeping the porch at 2721 Woodley Place and that she saw the plaintiff start to cross the street from the east to the west side of Woodley Place and then she saw the truck when the plaintiff was in the center of the street and at that time the truck had not yet approached the center of the intersection of Woodley Road with Woodley Place; that witness then looked away and then heard the screeching of brakes, which attracted her attention, and when she heard the screeching of brakes the truck was to the left of the center of the road, and when the truck struck the plaintiff the front of the truck was nearer the left side and the front of the truck was about two feet from the west curb facing toward the west.

Witness Helen L. Webb testified that she saw the plaintiff walking down the sidewalk and that when she reached the sidewalk from her house the plaintiff was two or three houses distant behind her on the same side of the street proceeding in a southerly direction on the east side of Woodley Place, and that when she (the witness) approached 2709 Woodley Place, she cut across the street to the west side and at that time noticed a truck coming north and that when she started to cross the street the truck had passed Woodley Road on the right-hand side of the street going north and that when she stepped up on the curb on the west side of the street she heard the truck jam on its brakes and knew that it had hit something and thought it was the woman behind her because they were the only two on the street at the time; that she turned and as she turned the car had stopped and had pitched the woman diagonally about three feet from the truck and the woman landed on her face and that the truck was on the right side of the roadway going north and that the street is narrow; that the truck was facing north and stopped right where it had hit her.

Witness Roland M. Kirby, a member of the Metropolitan Police Force, saw the truck standing between thirty and forty feet in Woodley Place, north of Woodley Road; that there was no one in the truck at that time; that the truck was in the middle of the roadway facing north.

Witness Arthur G. Keene, a member of the Metropolitan Police Force, testified that he also saw the truck in question and stated that the truck was parked on Woodley Place facing north, about thirty-five or forty feet north of the north crosswalk on Woodley Road; that as to the middle line of Woodley Place, the truck was on the east side because he went to the west side and directed southbound traffic which had plenty of room to go through.

The witness, Elmer J. Couture, also a member of the Metropolitan Police Force, stated that he made an examination of the brakes of the truck which was involved in the accident on Woodley Place and found the brakes in good condition, and that he found no skid marks on the roadway.

Witness Jessie Tyson, the operator of the truck, testified at the trial of the case that he struck the plaintiff; that he was proceeding in a northerly direction on Woodley Place about eighteen miles per hour, and that the truck was a light delivery Ford; that he was about four feet

from the east curb and that there was no traffic going either way; that he saw Mrs. Webb start across the street and that when he first saw plaintiff she was about eight feet away and he applied the brakes just as hard as he possibly could and tried to turn to the left to avoid hitting her and stopped right on a dime, and that when his truck was stopped it was just about four feet from the east curb with the front wheel turned to the left a little, but he could not definitely give the space between the curb and the front wheels but that they were to the right of the center of the street; that he did strike the plaintiff and knocked her down, but she was not thrown over four feet in front of the truck; and that after he stopped the truck the plaintiff was right in front of it and that he did not move the truck after that. However, witness in a written statement made several months following the accident, stated that the speed of the truck at the time of the accident was about twenty-five miles an hour.

We think that this testimony is sufficient to sustain the verdict for the plaintiff upon the ground that the truck was being driven at an excessive rate of speed without due care and that this was the real cause of the accident. Had the driver been operating the truck with due care at a reasonable and lawful rate of speed he would have been able to avoid colliding with the plaintiff, notwithstanding the fact that she had started across the street at a point some distance from the prescribed street crossing.

We, therefore, do not sustain the contention of appellant that the court should have directed a verdict for the defendant at the close of the evidence.

The appellant also assigns as error the action of the court in giving to the jury plaintiff's prayers Nos. 1, 4, and 6, and in denying defendant's requests for instruction Nos. 1, 2, and 4. In our opinion the ruling of the court in respect of these requests was not erroneous inasmuch as the instructions requested by the plaintiff were consistent with the established law relating to the last clear chance doctrine in accident cases, and, whereas, the instructions requested by the defendant were contrary to such doctrine. The charge of the court, including the prayers that were given to the jury, contained a sufficient presentation of the law of the case.

We have examined the assignments of error presented by the appellant relating to the closing address of the plaintiff's counsel touching upon the subject of damages, and also the assignment in relation to the court's ruling concerning the testimony of Dr. Goldenberg as to the physical conditions of the plaintiff resulting from the accident. We find no error in the rulings of the court in either instance. We, therefore, affirm the judgment of the lower court with costs.

Affirmed.

ROBB, J., took no part in the decision of this case.