**THOMAS v. UNITED STATES.**

No. 7602.

United States Court of Appeals for the
District of Columbia.

June 2, 1941.

906

Maurice R. Weeks, of Washington, D. C., for appellant.

Elwood H. Seal, Vernon E. West, and Michael J. Keane, Jr., all of Washington, D. C., for appellee.

Before STEPHENS, MILLER and RUTLEDGE, Associate Justices.

MILLER, Associate Justice.

Appellant was accused in the Juvenile Court of the District of Columbia— in accordance with the provisions of the Act of June 18, 1912[1]—of being the father of an illegitimate child. Following a trial by jury he was found guilty. We allowed an appeal.[2] One of the assignments of error challenged the refusal of the trial court to grant a one-day continuance, in order that appellant's counsel could prepare and submit an affidavit in support of his motion for a new trial. The motion for a continuance was made on the day which had been theretofore set for argument of the motion for a new trial. Counsel stated orally that the affidavit which he proposed to submit "would give an entirely different slant on the case." Although a motion for a continuance is submitted to the sound discretion of the court and its ruling thereon should not be disturbed in the absence of abuse of that discretion;[3] nevertheless, in the interest of justice and upon a stipulation of counsel representing both parties, this court remanded the case to the trial court for the purpose of hearing again the motion for a new trial. The trial judge was instructed that, in the event the motion should be again denied, a supplemental record should be filed in this court, in order that the case might then be disposed of, on the other assignments of error. The trial judge proceeded as directed; upon the rehearing the motion for a new trial was again denied; judgment was entered against appellant and a supplemental record has been filed in this court. This record fails to reveal any abuse of discretion

[1] 37 Stat. 134, D.C.Code (1929) tit. 18, §§ 281–288; 52 Stat. 597, D.C.Code (Supp.V, 1939) tit. 18, § 256 (c).

[2] 52 Stat. 603–604, D.C.Code (Supp.V, 1939) tit. 18, § 283.

[3] Isaacs v. United States, 159 U.S. 487, 489, 16 S.Ct. 51, 40 L.Ed. 229; Goodyear Service, Inc. v. Pretzfelder, 65 App. D.C. 389, 84 F.2d 242; Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377.

or reason to disturb the decision of the trial court.

On cross-examination at the original trial, the complaining witness was asked by appellant whether she "had been arrested and tried for larceny in the Juvenile Court on or about July, 1939." The court, upon objection of the government, refused to allow the question. This—contrary to appellant's contention—was eminently correct. The District of Columbia Code[4] provides that no person shall be incompetent to testify, by reason of his having been convicted of crime, but that such fact may be given in evidence to affect his credit as a witness. However, to constitute a conviction within the meaning of this provision, there must be either a plea or verdict of guilty and, in addition, judgment and sentence pronounced by the court.[5] Accordingly, a witness may not be asked if he has been indicted for a crime,[6] or even if he has been tried and convicted, if the conviction was later set aside and a new trial granted.[7] It follows that the question asked, pertaining to arrest and trial and not to conviction, was clearly improper in any event, and therefore was correctly refused.[8]

In the present case, the reason for refusal was even more imperative. The Juvenile Court has no jurisdiction to hear and determine an accusation of larceny except when the offense is charged to have been committed by a person under eighteen years of age.[9] It may waive its jurisdiction in such a case if the child is sixteen years of age or older; in which event the other court which then takes jurisdiction will proceed in the regular manner of a criminal court.[10] But if the child is under sixteen, or if the Juvenile Court retains jurisdiction of a child sixteen or over, it must proceed, not to a determination of guilt or innocence, but to "an adjudication upon the status" of the child.[11] Its procedure in making that adjudication is non-criminal[12] in character. Consequently, such an adjudication of the Juvenile Court concerning a child—whether he may be voluntarily

---

[4] D.C.Code (1929) tit. 9, § 12.

[5] Crawford v. United States, 59 App. D.C. 356, 41 F.2d 979.

[6] Chebithes v. Price, 59 App.D.C. 212, 37 F.2d 1008. See Coulston v. United States, 10 Cir., 51 F.2d 178, 182, holding that a question of whether the witness has been accused or arrested for crime may not be used to impeach, "for the sufficient reason that it calls for hearsay evidence, and because accusation carries no implication of guilt."

[7] Thompson v. United States, 30 App. D.C. 352, 359, 360, 12 Ann.Cas. 1004. See Sanford v. United States, 69 App. D.C. 44, 46, 98 F.2d 325, 327, and cases there cited. See also, Clawans v. District of Columbia, 61 App.D.C. 298, 62 F.2d 383.

[8] See 2 Wigmore, Evidence, 2d Ed. 1923, § 982; Notes, 6 A.L.R. 1608; 25 A.L.R. 339; 103 A.L.R. 350.

[9] D.C.Code (Supp.V, 1939) tit. 18, § 256.

[10] D.C.Code (Supp.V, 1939) tit. 18, § 263.

[11] D.C.Code (Supp.V, 1939) tit. 18, § 264.

[12] D.C.Code (Supp.V, 1939) tit. 18, §§ 257, 264; People v. Lewis, 260 N.Y. 171, 183 N.E. 353, 86 A.L.R. 1001, certiorari denied, 289 U.S. 709, 53 S.Ct. 786, 77 L.Ed. 1464; Ex parte Newkosky, 94 N. J.L. 314, 116 A. 716; Ex parte Janus-

zewski, C.C.S.D.Ohio, 196 F. 123, 129; Ex parte Daedler, 194 Cal. 320, 228 P. 467; Wissenberg v. Bradley, 209 Iowa 813, 229 N.W. 205, and authorities there cited. See Rule v. Geddes, 23 App.D.C. 31, 48, 50; Note, 67 A.L.R. 1082; Warner and Cabot, Changes in the Administration of Criminal Justice During the Past Fifty Years, 50 Harv.L.Rev. 583, 611; 1 Wharton, Criminal Law, 12th Ed. 1932, § 370; How Far Can Court Procedure be Socialized Without Impairing Individual Rights?, Children's Bureau Pub. No. 97 (U. S. Dep't Labor 1922) 55–69; Van Waters, The Socialization of Juvenile Court Procedure, 13 J. Crim. L. & Crim. (1922) 61; H. H. Lou, Juvenile Courts in the United States (1927) 129: "Formal criminal procedure is inconsistent with the theory underlying the juvenile-court legislation, which treats the child not as a criminal but as a delinquent, 'misdirected and misguided and needing aid, encouragement, help, and assistance,' as it has been expressed in many statutes. It is important that all means should be taken to prevent the child and his parents from forming the conception that the child is being tried for a crime. The primary function of the judge is not to prove that the child is or is not guilty of an offense but to get from the child the truth, to weigh the results of the social, physical, and mental findings, to determine what the needs of the child are, and then to decide upon the treatment."

delinquent or merely the unfortunate victim of others[13]—is in no sense the counterpart of a conviction in a criminal court; and none of the implications of conviction should result therefrom.[14] With these and other considerations in mind, Congress expressly specified that "No adjudication upon the status of any child in the jurisdiction of the court shall operate to impose any of the civil disabilities ordinarily imposed by conviction, nor shall any child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction of a crime, * * *." and, further, that "The disposition of a child or any evidence given in the court shall not be admissible as evidence against the child in any case or proceeding in any other court, * * *."[15] Similar statutes have been enacted in many of the states.[16] Their enactment is founded upon strong social policy, and their aim is amnesty and oblivion for the transgressions of youthful offenders.[17] The fundamental philosophy of the juvenile court laws is that a delinquent child is to be considered and treated not as a criminal but as a person requiring care, education and protection.[18] He is not thought of as "a bad man who should be punished, but as an erring or sick child who needs help."[19] Thus, the primary function of juvenile courts, properly considered, is not conviction or punishment for crime, but crime prevention and delinquency rehabilitation.[20] It would be a serious breach of public faith, therefore, to permit

[13] Hall, Juvenile Courts, 5 Encyc. Brit., 14th Ed. 1932, 477: "Bad surroundings, evil companions, undesirable parents, mental and physical deficiencies and various psychological causes are responsible for most juvenile delinquency."

[14] See In re Turner, 94 Kan. 115, 121, 122, 145 P. 871, 873, Ann.Cas.1916E, 1022; Commonwealth v. Fisher, 213 Pa. 48, 62 A. 198, 5 Ann.Cas. 92; Ex parte Sharp, 15 Idaho 120, 96 P. 563, 18 L.R.A.,N.S., 886; Cinque v. Boyd, 99 Conn. 70, 83, 121 A. 678, 683. See generally, Young, Social Treatment in Probation and Delinquency (1937) cc. X, XI. Cf. People v. De Fehr, 81 Cal.App. 562, 254 P. 588; Huff v. O'Bryant, decided April 28, 1941, — App.D.C. —, 121 F.2d 890.

[15] Section 14, Juvenile Act of June 1, 1938, 52 Stat. 599, 600, D.C.Code (Supp. V, 1939) tit. 18, § 264.

[16] These are listed in 1 Wigmore, Evidence, 2d Ed. 1923, § 196, n. 3.

[17] Kozler v. New York Tel. Co., 93 N.J.L. 279, 108 A. 375.

[18] Flexner & Baldwin, Juvenile Courts and Probation (1914) 6: "* * * * emphasis is laid, not on the act done by the child, but on the social facts and circumstances that are really the inducing causes of the child's appearance in court." See In re Turner, 94 Kan. 115, 145 P. 871; State ex rel. Miller v. Bryant, 94 Neb. 754, 144 N.W. 804; Ex parte Sharp, 15 Idaho 120, 96 P. 563, 18 L.R.A.,N.S., 886; State ex rel. Raddue v. Superior Court, 106 Wash. 619, 180 P. 875; Ex parte Januszewski, C.C.S.D. Ohio, 196 F. 123.

[19] Warner and Cabot, Changes in the Administration of Criminal Justice During the Past Fifty Years, 50 Harv.L. Rev. 583, 611. See People v. Lewis, 260 N.Y. 171, 183 N.E. 353, 86 A.L.R. 1001,

certiorari denied, 289 U.S. 709, 53 S.Ct. 786, 77 L.Ed. 1464.

[20] Wissenberg v. Bradley, 209 Iowa 813, 229 N.W. 205; Nicholl v. Koster, 157 Cal. 416, 419, 108 P. 302, 303; Cinque v. Boyd, 99 Conn. 70, 81 et seq., 121 A. 678, 682 et seq.; Wisconsin Industrial School v. Clark County, 103 Wis. 651, 664, 665, 79 N.W. 422, 427: "There is no restraint upon the natural liberty of children contemplated by such a law, —none whatever; but rather the placing of them under the natural restraint, so far as practicable, that should be, but is not, exercised by parental authority. It is the mere conferring upon them that protection to which, under the circumstances, they are entitled as a matter of right. It is for their welfare and that of the community at large. The design is not punishment, nor the restraint imprisonment, any more than is the wholesome restraint which a parent exercises over his child. The severity in either case must necessarily be tempered to meet the necessities of the particular situation. There is no probability, in the proper administration of the law, of the child's liberty being unduly invaded. Every statute which is designed to give protection, care and training to children, as a needed substitute for parental authority and performance of parental duty, is but a recognition of the duty of the state, as the legitimate guardian and protector of children where other guardianship fails." Facts About Juvenile Delinquency, Children's Bureau Pub. No. 215 (U. S. Dep't Labor 1932) 30: "As stated in the White House Conference report on 'The Delinquent Child,' 'Their primary function hinges on the fact that they are not looking outwardly at the act but, scrutinizing it as a symptom, are looking forward to what the child is to become.'

these informal and presumably beneficent procedures[21] to become the basis for criminal records, which could be used to harass a person throughout his life.[22] There is no more reason for permitting their use for such a purpose, than there would be to pry into school records or to compile family and community recollections concerning youthful indiscretions of persons who were fortunate enough to avoid the juvenile court.[23] As the language of the statute expressly forbids the interpretation[24] that the disposition of a child in a juvenile court proceeding constitutes conviction of a crime,[25] and as nothing short of conviction of crime is sufficient to warrant the inquiry which appellant was forbidden to make, his contention is completely devoid of merit.

It is next contended that the court erred in excluding from evidence the statement of a witness, called on behalf of appellant, to the effect that the witness had had sexual intercourse with the mother of the child on many occasions prior to July, 1937. The statement was clearly irrele-

vant. In a proceeding of this nature, the sole issue is the paternity of the illegitimate child, and the chastity of the mother is immaterial.[26] "Lewd conduct of the complainant is no defense, unless it tends to show that another than defendant is, or may be, the father of the child."[27] Hence, evidence that the mother had intercourse with another man at a period of time which, in the course of nature, could not result in the conception complained of, is not relevant to the inquiry and is, therefore, inadmissible.[28] In the present case the child was born on September 16, 1938. The excluded testimony related to acts committed more than fourteen months before. Obviously, the child could not have been begotten by such intercourse and, therefore, the court properly excluded the evidence.

On this appeal, appellant contends that evidence of sexual intercourse with another man prior to the period of conception was admissible for the purpose of impeaching the testimony of the mother. It is not necessary to decide this question,[29]

The question for the court is not one of leniency or mercy; it is one of ascertaining what is needed and acting accordingly with scrupulous justice. The court is concerned to understand why the particular child is delinquent, and, on the basis of this understanding, to attempt intelligent treatment for proper adjustment toward responsible future living."

See Mack, The Juvenile Court, 23 Harv.L.Rev. 104, 107.

[21] Wissenberg v. Bradley, 209 Iowa 813, 817, 229 N.W. 205, 207.

[22] See Kozler v. New York Tel. Co., 93 N.J.L. 279, 281, 108 A. 375, 376: "We see no reason why the Legislature may not enact that it is against public policy to hold over a young person in terrorem, perhaps for life, a conviction for some youthful transgression."

[23] Mack, The Juvenile Court, 23 Harv. L.Rev. 104, 107: "Why is it not just and proper to treat these juvenile offenders, as we deal with the neglected children, as a wise and merciful father handles his own child whose errors are not discovered by the authorities?"

[24] See note 15 supra.

[25] See 1 Wharton, Criminal Law, 12th Ed. 1932, §§ 369, 371; Van Waters, The Socialization of Juvenile Court Procedure, 13 J.Crim.L. & Crim. (1922) 61, 67: "Twenty-six states have safeguarding provisions against using evidence gained in the Juvenile Court against the child in other proceedings."; citing a Summary of Juvenile Court Legislation

in the United States, Children's Bureau Pub. No. 70 (U. S. Dep't Labor 1920) 41. Cf. People v. Superior Court, 104 Cal.App. 276, 285 P. 871.

[26] State v. Cotter, 167 Minn. 263, 265, 209 N.W. 4: " * * * the fact of unchastity is confessed by the complaint she makes, and her reputation has no tendency to prove that the accused is not the father of the child. The object of the proceedings is to obtain support and parental responsibility for an illegitimate child. Obviously it is wholly immaterial whether the mother was chaste or unchaste. The benefit to be obtained is for the child and perhaps for the public, and the statute was never intended to protect only the children of women of previously chaste character." See Rudulph v. State, 16 Ga.App. 353, 85 S.E. 365; Nimmo v. Sims, 178 Ark. 1052, 13 S.W.2d 304.

[27] State v. Lavin, 80 Iowa 555, 562, 46 N.W. 553, 555; 1 Wigmore, Evidence, 2d Ed. 1923, § 133.

[28] United States v. Collins, 25 Fed.Cas. page 544, No. 14,835, 1 Cranch C.C. 592; Royer v. State, 21 Ala.App. 381, 108 So. 652, 653; Mensing v. Croter, 209 Cal. 318, 287 P. 336; Dixon v. State, 88 Okl. 172, 212 P. 600; State v. Ferguson, 157 Wash. 19, 288 P. 239; State v. Patton, 102 Mont. 51, 55 P.2d 1290, 104 A.L.R. 76; 1 Wigmore, Evidence, 2d Ed. 1923, § 133; Note 104 A.L.R. 84.

[29] Cf. Shama v. United States, 8 Cir., 94 F.2d 1, 5, certiorari denied, 304 U.S. 568, 58 S.Ct. 1037, 82 L.Ed. 1533. See

because it was not offered for that purpose at the trial. If the appellant wished to urge its admissibility for impeachment purposes the trial court should have been given an opportunity to pass on that question. This opportunity not having been offered, and the evidence having been excluded solely on the ground of immateriality, the issue should not be permitted to be raised for the first time on appeal.

 The court properly refused to permit a witness to state "whether the child resembled someone he knew other than the defendant." Whether the child may have resembled someone the witness knew was immaterial, unless that person was one with whom the child's mother may have had illicit relations at approximately the time of conception. It was incumbent upon appellant, therefore, to limit his interrogatory accordingly.[30] This he did not do. Moreover, the question was inadmissible for another reason. In Fillipone v. United States,[31] we held that even when a child is exhibited to the jury for the purpose of establishing resemblance to the putative father, the fact of resemblance can have no evidentiary value unless there appear in the child physical characteristics peculiar to the father and unless the resemblance is so striking as to leave no reasonable doubt as to its existence. There is even more reason for imposing such a limitation upon the opinion of a witness concerning resemblance of the child to a third person who is not before the court. Consequently, even assuming the admissibility of the evidence,[32] if a proper question had been asked or if a proffer of proof had been made,[33] its exclusion in the present case was not error.[34]

 Error is next predicated upon the refusal of the court to grant appellant's prayers for instructions to the jury. It is contended that by not considering each prayer individually and ruling thereon, the court denied appellant an opportunity to except to the rulings, and precluded him from using the prayers in his argument to the jury. On this point, the record shows that when the prayers were offered, "the court informed the counsel for the defendant, that she would include everything in her instruction, and at the conclusion if the counsel was not satisfied, his prayers would be considered. At the conclusion of the instruction, the counsel for the defendant said he was satisfied with the instruction, * * *." The charge of the court does not appear in the record. Moreover, the prayers requested have not been included therein. Under the circumstances, and particularly in view of appellant's expression of satisfaction with the charge as given,[35] the contention is wholly without merit. It will be presumed that the prayers requested were embodied in the charge as given.[36] It is axiomatic that it is not error to refuse requested instructions, even though they may be correct statements of the law,

---

United States v. Manton, 2 Cir., 107 F.2d 834, 845, certiorari denied, 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012; Rea v. Missouri, 17 Wall. 532, 84 U.S. 532, 542, 21 L.Ed. 707; Fisk v. United States, 6 Cir., 279 F. 12, 17; Coulston v. United States, 10 Cir., 51 F.2d 178, 181, 182; 2 Wigmore, Evidence, 2d Ed. 1923, §§ 1000 et seq.; United States v. Socony-Vacuum Oil Co., Inc., 310 U.S. 150, 230, 60 S.Ct. 811, 84 L.Ed. 1129; Nimmo v. Sims, 178 Ark. 1052, 1055, 13 S.W.2d 304, 306: "Testimony as to acts of intercourse with other men at the time not within the period of conception would lead to an investigation of collateral matters and might take the jury away from the real issue to be determined by it, which is the paternity of the child"; Reeve v. Dennett, 145 Mass. 23, 28, 11 N.E. 938, 943, 944.

[30] Cf. Notes, 40 A.L.R. 97; 95 A.L.R. 314.

[31] 55 App.D.C. 126, 2 F.2d 928.

[32] 1 Wigmore, Evidence, 2d Ed. 1923, § 166; 4 id. § 1974; Note, 40 A.L.R. 97. See 7 Am.Jur., Bastards, § 35. Cf. United States v. Collins, 25 Fed.Cas. page 544, No. 14,835, 1 Cranch, C.C. 592; Jones v. Jones, 45 Md. 144.

[33] New York Life Ins. Co. v. Doerksen, 10 Cir., 75 F.2d 96, 101, 102; Stafford v. American Sec. & Tr. Co., 60 App.D.C. 380, 55 F.2d 542.

[34] Cf. Paulk v. State, 52 Ala. 427. It was held in Jordan v. Commonwealth, 180 Ky. 379, 385, 202 S.W. 896, 898, 1 A.L.R. 617, that proof of resemblance of a very young child should not be permitted in any event.

[35] Thompson v. United States, 59 App. D.C. 51, 32 F.2d 947. See Cohen v. Evening Star Newspaper Co., 72 App.D.C. 258, 113 F.2d 523.

[36] Meyer v. United States, 5 Cir., 220 F. 822, 827; Williams v. United States, 57 App.D.C. 253, 20 F.2d 269.

if the subject matter has been properly covered by the charge given.[37]

 It is also contended that the court erred in refusing to direct a verdict in appellant's favor at the close of the government's case. But we need not decide the question for, by introducing evidence in his own behalf, after the refusal of the motion, appellant waived his exception to the ruling.[38]

We have considered carefully all appellant's assignments and find that he suffered from no prejudicial error in respect of any of them.

Affirmed.

STEPHENS, Associate Justice.

I concur in the result reached in the instant case.

I concur in the ruling that the juvenile court correctly forbade an answer to the question whether the prosecuting witness "had been arrested and tried for larceny in the Juvenile Court on or about July, 1939." Even if adjudication of misconduct in the juvenile court constituted conviction of a crime—which it does not—the question was improper because the inquiry was concerning arrest and trial only. As correctly pointed out in the majority opinion such a question is not warranted.

But I dissent from the view expressed by the majority that that part of the Juvenile Court Act which provides that "The disposition of a child or any evidence given in the court shall not be admissible as evidence against the child in any case or proceeding in any other court ..." forbids the juvenile court itself to consider previous misconduct, shown by its own records, of a witness in a present proceeding, where that misconduct is of such character as will bear upon the credibility of that witness. For the juvenile court so to consider previous misconduct does not in my view impose upon a witness any of the civil disabilities ordinarily imposed by conviction, or treat a witness as a criminal, or constitute admission of evidence against a witness, contrary to the provisions of the Juvenile Court Act. I cannot conclude that it was the intention of Congress, when it laid down the wholesome protections of the Juvenile Court Act against treating children as criminals, to blind the eyes of the juvenile judge or of a jury in the juvenile court to considerations vitally bearing upon the credibility of testimony. And I think that the view taken by the majority in this respect will inevitably result in shocking miscarriages of justice in respect of both juveniles and adults. For example, an adult may be under present trial in the juvenile court upon a charge of contributing to the delinquency of a child. That child may be the only witness, and upon its uncorroborated testimony will therefore depend conviction or acquittal. The juvenile judge may know from the court's own records concerning past misconduct of this child that its word is utterly undependable. Yet, under the view of the majority, it must not consider that fact nor permit a jury to do so. Again, juvenile B may be on trial today in the juvenile court on a charge of misconduct preferred by juvenile A. Even though the judge knows from previous experience in the court with juvenile A that the latter's word is worthless, nevertheless, the judge may not consider that fact in the proceeding against juvenile B or permit a jury to do so.

Moreover, the expression of the majority on this subject is unnecessary to the decision of the case. As said above, the question asked of the witness related to arrest and trial rather than to conviction and was, therefore, improper in any event. There was no ruling in the juvenile court on the precise question whether that court can in a present proceeding consider as bearing upon the credibility of a witness past misconduct of that witness as shown by the court's own records. With due deference to my colleagues, I protest with all possible vigor against a gratuitous ruling on a subject of such grave consequence to juvenile court proceedings.

---

[37] Clifton v. United States, 54 App.D.C. 104, 295 F. 925; Talbert v. United States, 42 App.D.C. 1, 14, certiorari denied, 234 U.S. 762, 34 S.Ct. 997, 58 L.Ed. 1581.

[38] Murray v. United States, 53 App.D. C. 119, 288 F. 1008, certiorari denied, 262 U.S. 757, 43 S.Ct. 703, 67 L.Ed. 1218; Chevy Chase Dairy, Inc. v. Mullineaux, 63 App.D.C. 259, 71 F.2d 982; Smith v. United States, 61 App.D.C. 344, 62 F.2d 1061.