**GOODMAN v. DISTRICT OF COLUMBIA.**

**No. 1180.**

Municipal Court of Appeals for the
District of Columbia.

Argued March 31, 1952.

Decided April 29, 1952.

Alvin L. Newmyer, Washington, D. C., for appellant. John M. London, Washington, D. C., also entered an appearance for appellant.

Edward A. Beard, Asst. Corp. Counsel, Washington, D. C., with whom Vernon E. West, Corp. Counsel, and Chester H. Gray, Principal Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

The Juvenile Court, sitting without a jury, found the appellant to be the father of an illegitimate child and entered a judgment requiring him to support the child. The complainant was a married woman who initiated the action pursuant to Public Law 917, chapter 1225, 81st Congress, 2d Session approved January 11, 1951, 64 Stat. 1240.[1] Defendant has appealed.

The record shows that the complainant came to this country from Germany with her husband in 1948. Shortly after she separated from her husband in 1949 she met the appellant. From then on she saw him on an average of five or six times a week, admittedly having relations with him three or four times a week during this time. This adulterous conduct continued until immediately prior to the trial, which was had in November 1951. The only interruptions in this relationship were once when the complainant was out of town and during a short period when she attempted reconciliation with her husband after the baby was born.

---

1. This enactment repealed the former law on the subject, 37 Stat. 134, as amended 41 Stat. 1144, 44 Stat. 208. Among other changes it provides in Section 5 that "any married woman who is at least four months pregnant with a child, which if born alive, may be born out of wedlock, or who has been delivered of a child born out of wedlock and who was not living with nor cohabiting with her husband during the period of time in which such child could have been conceived, may go before an Assistant Corporation Counsel for the District of Columbia at the juvenile court and accuse any man of being the father of her child and request his arrest."

The crucial period during which it was possible for complainant to have conceived this child was approximately January 25, 1950, to March 8, 1950, the baby having been born November 4, 1950. It was complainant's testimony on direct examination that she was not living with her husband during the conception period and that the only man with whom she had intercourse during that period was the appellant.

Appellant's sole assignment of error is that the trial court committed prejudicial error in two instances in refusing to permit proper latitude in his cross-examination of the complaining witness.

■ The first instance concerns defendant's attorney's questioning the complaining witness' relations with a certain Norman Harvey. The complaining witness had just previously denied having any relations with this man during the conception period or having been out with him or entertaining him in a home during this period. When asked, "Were you ever in a home where he was during that period?" she answered, "Not in January, February, or March." When the defendant's attorney attempted to ask her, "When were you there?" there was an objection which was sustained by the court. This was clearly an attempt by defendant's counsel to question the complaining witness about her relations with other men at times outside the conception period, which is not permissible and is governed by our language in Peters v. District of Columbia, D.C.Mun.App., 84 A.2d 115, 118, where we said "The trial judge ruled that any such association would have to fall within the period [the conceptual period] because that was the only period during which she could have conceived the child. This is in harmony with Thomas v. United States, 74 App.D.C. 167, 121 F.2d 905, where it was held that the chastity of the mother is immaterial and that relations with other men must be limited to the period of possible conception." Moreover, as we shall see later, this question was answered by the complaining witness in subsequent testimony.

■ The second instance occurred after a colloquy with the court when the defend-

ant's attorney continued his cross-examination with the question, "Now, did you see this Norman Harvey at your girl friend's, Mickey Castle's house?" Objection to this question was also sustained by the court. Defendant's attorney then made the following proffer; "to show on the *cross-examination* of this witness that the occasion when she saw this other man was during the period between January, February, and early March of 1950 at her girl friend, Mickey Castle's, home and that she admitted to her girl friend, Mickey Castle, that she had had relations with this man." (Emphasis supplied.) The trial court again refused to permit the question, stating that defendant's attorney must first establish the time within the period. Continuing his cross-examination, defendant's attorney again asked the complaining witness if she had seen Norman Harvey at any time between January, February, and March 1950. She again denied having seen him during that time. (In subsequent testimony it was brought out by defendant's attorney that complaining witness had seen Norman Harvey at a party at Mickey Castle's house but that it was in the latter part of December 1949 "between Christmas and New Years'.") Defendant's attorney asked her, "And is it not a fact that you had relations that night in the home of Mickey Castle with Norman Harvey?" to which she categorically replied that she had not. A little further on defendant's attorney asked, "And did you or did you not admit to Mickey Castle that you had relations between January and early March of 1950 with this Norman Harvey?" To this the complaining witness emphatically answered, "No, I did not; and there never was a talk between us about such things."

It is apparent from the facts shown above that defendant's attorney not only failed in cross-examination to produce the evidence he offered to prove, but that he actually did receive an answer to his second question.

Inasmuch as the complainant was the only witness in the case, (the defendant having rested at the end of the Government's case) it became a question of cred-

ibility for the trier of the facts to determine if complaining witness was, in fact, telling the truth. The only inference that she was not telling the truth came from defendant's attorney who claimed that he would prove solely by *cross-examination* that she had relations with a man other than defendant during the crucial period. This, as we have seen, he failed to do.

It should be noted that in his proffer counsel for the defendant limited himself to cross-examination. He made no claim that he was laying the foundation or groundwork to impeach the testimony of the complainant. It is, therefore, not necessary to decide the question of its admissibility for purposes of impeachment because it was not offered for that purpose.

Appellant relies on our decision in Ellison v. United States, D.C.Mun.App., 85 A.2d 917, 918, contending that under the rule laid down in that case he should have been permitted to more fully develop complainant's associations with another man. We would point out, however, that the Ellison case is first of all distinguishable on the facts, because in that case the proffered testimony was in the form of physical exhibits, letters written by the complainant, which had been erroneously excluded. Furthermore, we held they were only admissible to give the defendant "an opportunity to develop when the admitted intimacies with the two other men took place and to establish if he could that such acts of complainant continued until the child was conceived." As we have indicated, the defendant in the case at bar was given full opportunity to show that the acts of complainant with another man did continue (if they ever occurred) until the child was conceived, but to an even greater degree, as defendant's attorney brought out by his continual questioning on that point, that the complaining witness denied having relations with any man other than appellant during that period.

We have read the cases cited by appellant, and we find each of them distinguishable from the present case.

Affirmed.