STATE, EX REL. WILLIAM E. MILLER, APPELLEE, v. WILBUR
F. BRYANT, COUNTY JUDGE, APPELLANT.

FILED DECEMBER 24, 1913.   No. 18,351.

1. Constitutional Law: "JUVENILE COURT LAW:" PUBLIC POLICY. The provisions of chapter 59, laws 1905, entitled "An act to regulate the treatment and control of dependent, neglected and delinquent children," are not opposed to sound public policy. On the contrary, they tend to foster and promote such a policy.

2. ———: ———: COURTS: JURISDICTION. The provisions of the act above described defining the power and jurisdiction of the district court is not unconstitutional as creating a new court; such court being an existing court of general common law and equity jurisdiction, and recognized by the constitution.

3. ———: ———: QUÆRE. The proviso to section 2 of the act giving concurrent jurisdiction to the police judge in cities having a population of 40,000 and upwards, within the limits of such city, was not an inducement to the passage of the act, and it is not necessary in this case to determine its constitutionality.

4. ———: ———: ———. The legislative amendment of 1913 (laws 1913, ch. 38) to the act, which relates to the pensioning of dependent children who have indigent parents, is not involved in this controversy, and its validity is not decided.

· APPEAL from the district court for Cedar county: GUY
T. GRAVES, JUDGE.  Affirmed.

Wilbur F. Bryant, pro se.

William E. Miller, contra.

BARNES, J.

Appeal from a judgment of the district court for Cedar county awarding the relator a writ of mandamus to compel the county judge of that county to file a petition, under the provisions of the juvenile court law of 1905, to issue the process of the court and proceed to a hearing thereon.

It appears that the relator prepared and tendered to the county judge, in the absence of the judge of the district court from Cedar county, a complaint in due form charging that one Leo Tatro, a child 13 years of age, living with his father at Hartington, in said county, is a neglected child, in that he has never been sent to the public school of the district in which he resides, or to any other school, as provided by the statutes of this state; and that he is kept at hard manual labor above and beyond his strength. The prayer of the petition was for process, and an examination before the court, and for such order as might be found necessary and proper in the premises. Relator at the same time tendered to respondent the necessary fees, which he refused to accept or receive, and thereupon respondent declined to file said petition, and refused to take any action thereon. Relator then commenced this action in the district court in mandamus. On a hearing on a demurrer to the application, the writ was awarded, and the respondent has appealed.

The respondent contends that the juvenile court law of 1905 (laws 1905, ch. 59; Comp. St. 1911, ch. 20, art. II) is against public policy, and summarizes his argument as follows: First, that this law makes the state the supreme authority over a child, while its parents are mere trustees; second, that section 14 of the original act permits brokerage in children; third, that the legislative amendment of 1913, which relates to the pensioning of children who have indigent parents, is unconstitutional and void.

The law in question, substantially in its present form, has been adopted by many of the other states, and the courts of those states have often been called upon to de-

termine its nature, scope, policy, and validity. It may be said that its purpose is to help, not punish, the child. Its functions are largely parental, and it acts in the interests of the child, not adversely thereto. The law is not of a criminal nature. The purpose of the criminal law is to punish, while the juvenile law is to help the child, and restraint is only imposed as a means of such help.

The policy and constitutionality of a statute very like our own was before the supreme court of Pennsylvania in *Commonwealth v. Fisher*, 213 Pa. St. 48, 62 Atl. 198. It was there said: "The design is not punishment, nor the restraint imprisonment, any more than is the wholesome restraint which a parent exercises over the child. The severity in either case must necessarily be tempered to meet the necessities of the particular situation. There is no probability, in the proper administration of the law, of the child's liberty being unduly invaded. Every statute which is designed to give protection, care and training to children, as a needed substitute for parental authority and performance of parental duty, is but a recognition of the duty of the state, as the legitimate guardian and protector of children where other guardianship fails. No constitutional right is violated, but one of the most important duties which organized society owes to its helpless members is performed just in the measure that the law is framed with wisdom and is carefully administered. The conclusions above expressed are in accordance with adjudications elsewhere with but very few exceptions."

In *In re Sharp*, 15 Idaho, 120, 96 Pac. 563, the court uses the following language: "We may premise our citation of authorities, however, by a general statement that this statute is clearly not a criminal or penal statute in its nature. Its purpose is rather to prevent minors under the age of 16 from prosecution and conviction on charges of misdemeanors, and in that respect to relieve them from the odium of criminal prosecutions and punishment. Its object is to confer a benefit both upon the child and the community in the way of surrounding the child with better

and more elevating influences and of educating and training him in the direction of good citizenship, and thereby saving him to society and adding a good and useful citizen to the community. This, too, is done for the minor at a time when he is not entitled, either by natural law or the laws of the land, to his absolute freedom, but rather at a time when he is subject to the restraint and custody of either a natural guardian or a legally constituted and appointed guardian to whom he owes obedience and subjection. Under this law the state, for the time being, assumes to discharge the parental duty and to direct his custody and assume his restraint."

In *Mill v. Brown,* 31 Utah, 473, 88 Pac. 609, the court said: "Such laws are most salutary and are in no sense criminal and not intended as a punishment, but are calculated to save the child from becoming a criminal. The whole and only object of such laws is to provide the child with an environment such as will save him to the state and society as a useful and law-abiding citizen, and to give him the educational requirements necessary to attain that end. To effect this purpose some restraint is essential."

Statutes of the nature of the one in question, unless they plainly conflict with the constitution, are generally taken by the courts to be the best evidence of an enlightened public policy. It is a naked assumption to say that any matter allowed by the legislature is against public policy. The best indication of public policy is found in the enactments of our legislatures. To say that such a law is of an immoral tendency is disrespectful to the legislature who no doubt designed by its adoption to promote morality. This court has gone so far as to hold that, before a law can be determined unconstitutional, the express provision of our constitution which the law contravenes must be pointed out. *Boyes v. Summers,* 46 Neb. 308. And it has been universally held that the party who claims the act is unconstitutional must be able to point to the particular section with which it is in conflict. *State v. Van Duyn,*

24 Neb. 586; *Rosenbloom v. State,* 64 Neb. 342; *State v. Nolan,* 71 Neb. 136. The respondent has failed to comply with this rule. A careful examination of the act in question convinces us that it is not opposed to, but is directly in line with, sound public policy.

The respondent's second contention is that the act in question violates the constitution because it establishes a new court not provided for therein, and defines its jurisdiction. Section 2 of the act provides: "The district court of the several counties in this state and the judges thereof in vacation, shall have original jurisdiction in all cases coming within the terms of this act." It further provides, in substance, that the county court in each county shall have concurrent jurisdiction with the district court, but that such jurisdiction shall not be exercised except in the absence of the judge or the judges of the district court from the county; that, where a proceeding has been instituted under the act before any county court, the jurisdiction of that court is continued until the final disposition of the case, and an appeal is provided for to the district court in the same manner as in civil cases. The section also provides for the calling of a jury in case a delinquent child is charged with a crime against the laws of the state. The section concludes with a proviso as follows: "In cities having a population of 40,000 and upward, the police judge thereof shall have jurisdiction under this act concurrent with the county judge within the limits of such city." By section 3 it is provided: "In counties having over 40,000 population, the judges of the district court shall, at such times as they shall determine, designate one or more of their number, whose duty it shall be to hear all cases coming under this act. A special court-room to be designated as the juvenile court-room, shall be provided for the hearing of such cases, and the finding of the court shall be entered in a book or books to be kept for that purpose, and known as the 'juvenile court record,' and the court may for convenience be called the 'juvenile court.'"

It appears that the legislative assembly of the state of Pennsylvania passed an act similar to the one in question, and conferred jurisdiction upon the court of quarter sessions in all cases arising thereunder. The constitutionality of that law was challenged in *Commonwealth v. Fisher, supra,* and the act was declared constitutional. Section 9, art. V of the constitution of that state, provides: "Judges of the court of common pleas learned in the law shall be judges of the court of oyer and terminer, quarter sessions of the peace and general jail delivery, and of the orphans' court, and within their respective districts shall be justices of the peace as to criminal matters." Section 26, art. V of the constitution of that state, also provides: "All laws relating to courts shall be general and of uniform operation, and the organization, jurisdiction and powers of all courts of the same class or grade, so far as regulated by law, and the force and effect of the process and judgment of such courts, shall be uniform; and the general assembly is hereby prohibited from creating other courts to exercise the powers vested by this constitution in the judges of the court of common pleas and orphans' courts." The contention was the same as in the case at bar, and the supreme court of that state, in passing on the question, said: "No new court is created by the act under consideration. In its title it is called an act to define the powers of an already existing and ancient court. In caring for the neglected or unfortunate children of the commonwealth, and in defining the powers to be exercised by that court in connection with these children, recognized by the state as its wards requiring its care and protection, jurisdiction is conferred upon that court as the appropriate one, and not upon a new one created by the act. The court of quarter sessions is not simply a criminal court. The constitution recognizes it, but says nothing as to its jurisdiction. Its existence antedates our colonial times, and, by the common law and statutes, both here and in England, it has for generations been a court of broad general police powers in no way connected with its criminal jurisdiction. Innumer-

able statutes upon our own books during the last two centuries attest this.    With its jurisdiction unrestricted by the constitution, it is for the legislature to declare what shall be exercised by it as a general police court, and, instead of creating a distinctively new court, the act of 1903 does nothing more than confer additional powers upon the old court and clearly define them."

By the act under consideration no new court was created, but the already existing district court was given new and additional powers and jurisdiction.    That court is a court . of general common law and equity jurisdiction, and it was clearly within the power of the legislature to require that court to exercise the powers and jurisdiction provided for by the juvenile court law.    At the same time the legislature provided that the county court should exercise the jurisdiction given the district court, in the absence of the judge or judges of that court from the county where the proceedings were instituted.    The statute also properly provided that when a cause was commenced before the county judge he should retain jurisdiction until it was completed, and an appeal was provided for from his orders or judgment to the district court.    Thus the matter of the administration of the law was placed in the district court.    In *Robison v. Wayne Circuit Judges,* 151 Mich. 315, 325, in discussing the constitutionality of the juvenile court statute, the court said: "Such legislation as that under consideration is but a transfer of the jurisdiction which formerly reposed in the court of chancery, in the exercise of the right of the king as *parens patria* to the guardianship of children, to the juvenile courts which perform the duty of seeing that the child is properly cared for."    We are therefore of opinion that the act in its main provisions violates no section of the constitution of this state.

It is urged, however, that the proviso to section 2 was the inducement for the passage of the entire act, and, the proviso being unconstitutional, the whole act must fail. An examination of the act discloses that it contains 19

sections.  Most of them provide for the mode of dealing with juvenile delinquents or dependents; and we cannot presume that the proviso giving to police judges in certain cities jurisdiction concurrent with that of the county judge was the inducement for the passage of the entire act.  It is apparent that the proviso, if unconstitutional, can be eliminated without in any way affecting the other provisions of the act.  In such case the remainder of the act being intelligible, complete and capable of execution, should be upheld.  *Scott v. Flowers,* 61 Neb. 620.

Finally, it is argued by the respondent that the amendment to the act passed by the legislature of 1913, relating to pensions for indigent parents of neglected children, is unconstitutional.  The amendment in question could not of course have been an inducement to the passage of the original act.  The question of its validity is not involved in this proceeding, and therefore is not determined.

As we view the act in controversy, it does not offend any of the provisions of the constitution, and the judgment of the district court is

AFFIRMED.