Laurie v. State.

---

ALTON LAURIE v. STATE OF NEBRASKA.

FILED MARCH 28, 1922.   No. 22402.

1.  Infants: PETITION: CHARGE: JURY TRIAL. Petition set forth in the opinion examined, and *held* not to charge defendant with crime, and not to entitle him to a jury trial, and no arraignment necessary.

2.  Appeal: IMMATERIAL EVIDENCE. A case tried to the court without intervention of a jury will not be reversed on account of the introduction of immaterial testimony, if there is sufficient competent and material evidence in the record to sustain the judgment.

3.  Evidence examined, and *held* to sustain the judgment of the trial court.

ERROR to the district court for Hamilton county: EDWARD E. GOOD, JUDGE. *Affirmed.*

*Roscoe R. Smith* and *J. H. Grosvenor,* for plaintiff in error.

Laurie v. State.

*Clarence A. Davis, Attorney General,* and *Mason Wheeler, contra.*

Heard before MORRISSEY, C. J., ROSE, ALDRICH and FLANSBURG, JJ., DICKSON and STAUFFER, District Judges.

DICKSON, District Judge.

This is a proceeding in error from the district court for Hamilton county. From the record it appears that the county attorney filed a complaint under the juvenile court act against the plaintiff in error, a boy 15 years of age, in the county court of that county. Upon this complaint, process issued, and the boy and his parents appeared in court. Later, an amended complaint was filed. To this, as well as to the original complaint, a plea of not guilty was entered, and after a hearing the boy was, by the county court, found to be a fit subject for commitment to the state industrial school, and from the order of commitment an appeal was taken to the district court, where the county attorney filed a petition in which it was charged that the plaintiff in error, Alton Laurie, was a minor under 16 years of age, and that "said Alton Laurie is growing up under such circumstances as would tend to cause such child to lead a vicious and immoral life; that for lack of proper control he is growing up in delinquency and crime; that he is an habitual truant; that he is incorrigible; that he habitually uses obscene, profane and indecent language; that on or about February 14, 1921, and at various times during the present school year, he was guilty of immoral conduct in and about a schoolhouse in Aurora, Hamilton county, Nebraska; that on or about March 18, 1921, he was guilty of immoral conduct in a public place, to wit, on the public highways in said county; that although under 18 years of age he habitually smokes cigarettes; that although under 16 years of age he has repeatedly been guilty of operating a motor car upon the highways of this county in defiance of law and of his parents' wishes." A trial by jury was demanded and refused, and, after a hearing and trial, the court found that

the boy was "a fit subject for commitment to the state industrial school at Kearney, Nebraska," and "that said minor is growing up in delinquency and crime, and under such circumstances as would tend to cause him to lead a vicious and immoral life," and ordered his commitment to the superintendent of the state industrial school for boys at Kearney. A motion for a new trial was filed and overruled, and, from the judgment committing the boy to the industrial school, he prosecutes error to this court.

Plaintiff in error assigns many reasons why the judgment committing him to the industrial school should be set aside and a new trial granted, all of which we have carefully examined and considered.

It is contended by plaintiff in error that the court erred in denying him a trial by jury. This involves an examination of the juvenile court act, and, in principle, the case of *Bell v. State,* 104 Neb. 203, is decisive of the question. But in view of some of the provisions of the juvenile court act, and it being a new question, we deem it advisable to give consideration to the petition and its legal effect.

The act itself makes no provision for a trial by jury except where a delinquent child is charged with a crime. The complaint was intended to charge, and did charge, the boy with being a dependent, neglected and delinquent child. Dependent and neglected in this; that said Alton Laurie was growing up under such circumstances as would tend to cause such child to lead a vicious and immoral life; that, for lack of proper control, he was growing up in delinquency and crime, delinquent in this, that he is an habitual truant and incorrigible; that he has violated the laws of the state; that he habitually uses profane, obscene and indecent language; that he is guilty of immoral conduct in and about a schoolhouse and on the public highway; that he habitually smokes cigarettes and was repeatedly guilty of operating a motor car in violation of law. It is evident the specific charges in the complaint of law violation were not made with the intention of charging him with crime, but to set forth and state the facts showing him

to be a dependent, neglected and delinquent child. The statute defines dependent, neglected and delinquent children, and to bring the case within the statutory provision, it was necessary to make these allegations, and without such, or similar allegations, the petition would be subject to attack. It is not enough that the petition charge that the boy was a dependent, neglected and delinquent child, but it must go farther and set forth facts showing that he was such a child, and until such a petition was filed he would be uninformed of what he would have to meet. The petition in such cases must inform the defendant of the charge he is to meet, to enable him to prepare for his trial. And an examination of the petition brings us to the irresistible conclusion that the charge against the boy was that of delinquency. A commitment to the industrial school upon such a charge is not a conviction of a crime, or a commitment to a penal institution. This question of a right of trial by jury was before the supreme court of Wisconsin in *Wisconsin Industrial School for Girls v. Clark County*, 103 Wis. 651. The following is paragraph 5 of the syllabus in that case:

"The commitment of a child to an industrial school corporation, not as a punishment for crime, but to furnish the child needed guardianship, maintenance, and care for its benefit and that of society, is not an interference with personal liberty requiring a trial by jury to justify it."

Judge Marshall, in discussing the question of the right of a trial by jury and the object and purposes of the law, says in his opinion:

"The proceeding is not one according to the course of the common law in which the right of trial by jury is guaranteed, but a mere statutory proceeding for the accomplishment of the protection of the helpless, which object was accomplished before the Constitution without the enjoyment of a jury trial. There is no restraint upon the natural liberty of children contemplated by such a law —none whatever; but rather the placing of them under the natural restraint, so far as practicable, that should be,

but is not, exercised by parental authority. It is the mere conferring upon them that protection to which, under the circumstances, they are entitled as a matter of right. It is for their welfare and that of the community at large. The design is not punishment, nor the restraint imprisonment, any more than is the wholesome restraint which a parent exercises over his child. The severity in either case must necessarily be tempered to meet the necessities of the particular situation. There is no probability, in the proper administration of the law, of the child's liberty being unduly invaded. Every statute which is designed to give protection, care and training to children, as a needed substitute for parental authority and performance of parental duty, is but a recognition of the duty of the state, as the legitimate guardian and protector of children where other guardianship fails. No constitutional right is violated, but one of the most important duties which organized society owes to its helpless members is performed just in the measure that the law is framed with wisdom and is carefully administered."

This case, and the case of *Bell v. State, supra,* are decisive of the question of the right of trial by jury, as well as the contention of counsel for plaintiff in error that "the provisions of the juvenile court law that purport to deprive minors of their liberty without due process are unconstitutional and void, especially in cases where there has been no prior conviction and no plea of guilty to a charge of misdemeanor or crime," and we deem further consideration of these questions unnecessary.

Complaint is made because the trial court failed to arraign the defendant upon the petition filed in that court. The record discloses that two complaints were filed in the county court; that to each of these complaints the defendant was arraigned and entered his plea of not guilty. Our statute gave the defendant the right of appeal as in civil cases. Whether it was necessary to file a new petition in the district court, we do not pass upon. A comparison of the petition filed in the district court and the amended

complaint filed in the county court shows them to be almost identical. To the complaints filed in the county court, he entered his plea of not guilty, and we cannot see how he was prejudiced by not being required to plead to the petition in the district court, as none of his rights were affected thereby. There was a trial upon the merits, and he was not deprived of any substantial right. He was not charged with crime, nor was he tried for crime. It was a hearing or an examination by the judge under the juvenile act, and no arraignment was necessary.

Error is predicated upon the fact that the petition differs from the original complaint filed in the county court. It was within the discretion of the county judge to permit the filing of an amended complaint. Besides, the record discloses that the plaintiff in error was represented by counsel in both the county court and in the district court, and that no objections were made to the filing of the amended complaint in the county court, nor to the petition in the district court, it being almost identical in words with the amended complaint filed in the county court, and plaintiff in error has nothing to complain of by reason of the filing of the amended complaint in the county court or to the petition in the district court.

A reversal is sought on account of the admission of the evidence of the county judge. The attorney general in his brief admits that the testimony was probably immaterial and irrelevant. Granting that it was, this would not, in itself, necessitate a reversal, if there is sufficient competent and material evidence in the record to sustain the judgment. *Wilson v. Wilson,* 94 Neb. 192.

It is vigorously contended by plaintiff in error that the judgment is not sustained by sufficient evidence. We have very carefully examined the record in this case, and have come to the conclusion there is sufficient competent and material evidence in the record to sustain the judgment. Many of the associates of the plaintiff in error were called as witnesses and testified in the case. Their testimony is undisputed and shows him to be a dependent, neg-

Laurie v. State.

lected and delinquent boy, beyond the control of the con-
stituted authorities, teachers and parents, a menace to the
schools and those who come in contact with him and who,
of necessity, are forced to associate with him. No one can
read the record and come to any other conclusion. Specific
reference to the evidence will answer no good purpose.
The witnesses were before the county judge as well as the
district judge. They had an opportunity to observe the
boy himself, and, because of their opportunities for investi-
gation and observation, were better able to determine the
proper disposition and training of the boy than this court.
To keep him in the public school would be impracticable,
and that would be putting it in the mildest possible way.
We realize it is a serious matter to take from the home and
from the guardianship of father and mother a boy of these
years; but when parents fail to perform their duty, there-
by losing control of their child, they have no one to blame
but themselves, and should not complain when the courts
find it necessary, in the interest of society and the welfare
of the community, to curb and correct the delinquent. A
great majority of the juvenile delinquencies can be traced
directly to the home and its environments. Present day
conditions have, in a great measure, destroyed the home
life. The boy and girl of 15 are today, in too many in-
stances, allowed to follow and indulge in their own in-
clinations, whether right or wrong, and parents are en-
tirely too indifferent to the child's welfare, and as a re-
sult are, in many instances, brought face to face with such
conditions as confront the parents of this boy. The pub-
lic is even more indulgent at times than the parents. Of-
ficials are not prone to act, and as a result, no action is
taken until the public rises up in arms, so to speak, and
demands that action be taken. Parents then plead, as
did the parents in this case, that the child's shortcomings
and misdoings were due to his or her associates and asso-
ciations, realizing that they, and they only, are responsible
for the child's associates and associations when it is too
late.

Upon the disposition of this case by this court, the boy is again within the jurisdiction of the juvenile court, and it has the power of further investigation. The object of the law is corrective. Great discretion is given the judge of the juvenile court as to how this shall be accomplished. The act provides that it "shall be liberally construed to the end that its purpose may be carried out, to wit: That the care, custody and discipline of a dependent, neglected or delinquent child shall approximate, as nearly as may be, that which should be given by its parents, and, in all cases where it can be properly done, the child shall be placed in an approved family home and become a member of the family by legal adoption or otherwise." Rev. St. 1913, sec. 1260. If it shall appear to the court on investigation that, during the pendency of this appeal to this court, the life, habits and conduct of the boy have so changed that in the judgment of the court the order of commitment should be changed or modified, it is not too late to change or modify the same to meet the changed and existing conditions, to the end that the object and purpose of the act be carried out and his reformation brought about in some other way and place. To hold otherwise would not give effect to the object and purpose of the act.

The case is affirmed, with authority to the judge of the juvenile court to make further investigation, and to make such final disposition of the case as, in the judgment of the court, will bring about the boy's reformation.

JUDGMENT ACCORDINGLY.