CLARENCE J. DEBACKER, APPELLANT, V. HOMER BRAINARD, SHERIFF OF DODGE COUNTY, NEBRASKA, APPELLEE.

161 N. W. 2d 508

Filed October 4, 1968. No. 36989.

Kerrigan, Line & Martin, for appellant.

Richard L. Kuhlman, for appellee.

Clarence A. H. Meyer, Attorney General, and Melvin K. Kammerlohr, for amicus curiae.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

PER CURIAM.

The petitioner was found to be a delinquent child and ordered committed to the Boys' Training School at Kearney. The facts alleged as the basis for the charge of delinquency constituted the crime of forgery if he had been charged under the general criminal laws. Petitioner asserts that section 43-206.03, R. S. Supp., 1967, a part of the Juvenile Court Act, is unconstitutional in that it denies him the right of a jury trial, and applies a "preponderance of the evidence" rule rather than a "beyond a reasonable doubt" rule to the adjudication of delinquency.

Four judges are of the opinon that the statute is unconstitutional as challenged. Three judges are of the opinion that it is constitutional. Article V, section 2, Constitution of Nebraska, provides in part: "No legislative act shall be held unconstitutional except by the concurrence of five judges."

The petition for habeas corpus here was dismissed by the district court. That judgment, must, therefore, be affirmed.

AFFIRMED.

McCown, J., joined by Spencer, Boslaugh, and Smith, JJ.

The constitutional rights of juveniles and the developing ramifications of In re Gault, 387 U. S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (May 15, 1967), are at issue here. By habeas corpus, the petitioner, a 17-year-old minor, sought his discharge from the custody of the Dodge County sheriff under an order committing him to the Boys' Training School at Kearney. The denial of a jury trial and the statutory application of a preponderance of the evidence rule rather than the beyond a reasonable doubt rule are the basis of the constitutional challenge.

The county attorney filed a petition in the Dodge County court within its juvenile jurisdiction charging that Clarence J. DeBacker, a minor 17 years of age, was a delinquent child within the meaning of section 43-201(4), R. S. Supp., 1967. The basis for the charge of delinquency was the possession of a forged check with intent to utter it as genuine. The facts alleged in the petition constituted the crime of forgery under section 28-601(2), R. R. S. 1943, if he had been charged under the general criminal laws. The penalty for violation of that section is imprisonment in the Nebraska Penal and Correctional Complex not exceeding 20 years nor less than 1 year and a fine not exceeding $500.

The check bore the signature "Donald J. DeBacker," petitioner's father, and was given to the O. P. Skaggs store for groceries on January 26, 1968. The check was passed by the petitioner who said his father's signature was on the check. Petitioner's father and mother were known to the clerk at the store who had taken checks from petitioner's father previously. Petitioner, after full and complete Miranda warnings, gave a statement to the police in which he stated that his mother was determined she was going to have a birthday party for the petitioner and needed more food. His mother was very jittery and told petitioner to sign his father's name to a check blank which she had given him. Petitioner's

mother assured him that it was all right for him to go ahead and write the check so he did so, signing his father's name. Petitioner and his mother went to the store and petitioner went in and got groceries and approximately $10 change. It was stipulated that petitioner's father would testify that his wife could not write checks on his account; that he told the store the check was not signed by him; that his signature did not appear on the check; and that he told the police perhaps his wife and petitioner may have had something to do with the check.

Before the proceedings commenced, petitioner objected to the jurisdiction of the court because of the denial of his right to a jury trial. At the conclusion of the evidence, the county judge, as judge of the juvenile court, overruled the objection to the jurisdiction of the court, and found that petitioner was a delinquent child. Thereafter, the court ordered the petitioner committed immediately to the Boys' Training School at Kearney. Habeas corpus relief was denied by the district court, and this appeal followed.

Some background is necessary to provide a frame of reference for the constitutional issues raised here. Until the turn of the century, juveniles in the United States were generally treated as adults insofar as the criminal law was concerned, and, of course, had the same constitutional rights as adults. With the advent of juvenile court acts, which began in Illinois in 1899, the system of juvenile courts spread to every state in the union. The theory was that for their misconduct, children should not be handled, treated, or punished in the same fashion, nor under the same processes and procedures, as adult criminals. The theory also was that a child should not be determined to be guilty or innocent of criminal conduct and there should be a broad range of rehabilitation procedures. In brief, the juvenile court procedures were regarded as being beneficial to the child, and intended to remove and discard the technicalities of substantive and

procedural law for adults. Over 40 states have upheld the constitutionality of juvenile court laws erected on such concepts. Nebraska was one. See State ex rel. Miller v. Bryant, 94 Neb. 754, 144 N. W. 804 (1913). In that case, our court took the same approach as other states, and based the validity of the Juvenile Court Act on the doctrine of parens patriae. The state, through the juvenile court, was merely performing the duty of seeing that the child was properly cared for. The problems involved in denying to a juvenile the constitutional protections afforded to an adult charged with crime were avoided simply by declaring that the juvenile court procedure was civil rather than criminal in nature. This court said in State ex rel. Miller v. Bryant, *supra*: "The law is not of a criminal nature. The purpose of the criminal law is to punish, while the juvenile law is to help the child, and restraint is only imposed as a means of such help."

Some of the juvenile court acts made the jurisdiction of the juvenile court exclusive, and some provided for a waiver by the juvenile court to the adult criminal court. The Nebraska pattern created a concurrent jurisdiction as to criminal misconduct, and enabled the county attorney to determine whether to file an action under the general criminal laws of the state, or a delinquency proceeding in the juvenile court. See, State v. McCoy, 145 Neb. 750, 18 N. W. 2d 101; Fugate v. Ronin, 167 Neb. 70, 91 N. W. 2d 240.

At its inception in 1905, and until 1963, the Nebraska Juvenile Court Act, with respect to jury trials in juvenile court, provided: "In all trials under this act where a delinquent child is charged with a crime, any person interested therein may demand a jury or the judge of (on) his own motion may order a jury to try the case; * * *." See Laws, 1905, c. 59, § 2, p. 306, now § 43-402, R. R. S. 1943.

This specific provision for a jury trial was effectively eliminated by this court. We held that charging a child

with being delinquent did not charge him with a crime, even though the facts alleged would have constituted a specific charge of crime if made against an adult. Such charges, we said, merely set forth the necessary facts showing him to be delinquent. See Laurie v. State, 108 Neb. 239, 188 N. W. 110.

This position was reaffirmed on many occasions. See State ex rel. Weiner v. Hans, 174 Neb. 612, 119 N. W. 2d 72 (1963). It should be noted that in the Hans case, Chief Justice Simmons specifically dissented from that part of the court's opinion that approved the denial of a jury trial. He stated in that dissent: "By the device of charging that the accused is a delinquent and not a criminal, a jury trial is denied. The substance of the offense and not the form of the charge should control. The liberty and reputation of a person is involved. Youth as well as maturity are entitled to the benefits of the jury system. The statute and the Constitution so provide."

In 1963, in an extensive recodification of the Juvenile Court Act, the provision for jury trials was removed. Section 43-206.03, R. S. Supp., 1967, now provides in part: "(2) Hearings shall be conducted by the judge without a jury in an informal manner, applying the customary rules of evidence in use in civil trials without a jury in the district courts.

"(3) At the hearing the court shall first consider only the question of whether the minor is a person described by section 43-201. This shall be known as the adjudication. After hearing the evidence on said question, the court shall make a finding and adjudication entered in the minutes based on the preponderance of the evidence, whether or not the minor is a person described by section 43-201.

"(4) If the court shall find that the child named in the petition is not within the provisions of section 43-201 it shall dismiss the case. If the court finds that the child named in the petition is such a child, it shall make

and enter its finding and adjudication accordingly, designating which subdivision or subdivisions of section 43-201 said child is within; the court shall then proceed to an inquiry into the proper disposition to be made of the child."

Section 43-201, R. S. Supp., 1967, now establishes four different subdivisions: Dependent child, neglected child, delinquent child, and a child in need of special supervision.

This pattern was only typical of what happened in all the states. Form swallowed substance, and semantics disposed of the constitutional rights of juveniles charged with being "delinquent." The basic assumption that an adjudication of "delinquency" was in no sense criminal but only civil was reflected by both courts and legislatures. The result was that a child charged in juvenile court with misconduct which would have been criminal if he had been an adult became, in effect, a constitutional nonperson. And then came Gault!

In In re Gault, 387 U. S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527, it was stated: "Failure to observe the fundamental requirements of due process has resulted in instances, which might have been avoided, of unfairness to individuals and inadequate or inaccurate findings of fact and unfortunate prescriptions of remedy. Due process of law is the primary and indispensable foundation of individual freedom. It is the basic and essential term in the social compact which defines the rights of the individual and delimits the powers which the state may exercise."

The Gault case, which applied the due process standard to juvenile proceedings involving the adjudication of delinquency, was foreshadowed in Kent v. United States, 383 U. S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966). That case held that the hearing in juvenile court to waive the "exclusive" jurisdiction of the juvenile court to the adult criminal court under a District of

Columbia statute must measure up to the essentials of due process and fair treatment.

In re Gault has spawned an almost unending volume of comment. The holding in Gault refers only to the adjudicatory stage of the juvenile court process—the adjudication of delinquency where commitment to a state institution may follow and when the proceedings may result in incarceration in an institution of confinement. It does not require that juveniles be handled as adults, nor does it affect the dispositional process after an adjudication of delinquency. It clearly does not apply to procedures involving neglected or dependent children, nor to any proceeding except those by which a determination is made as to whether a juvenile is a "delinquent" as a result of alleged misconduct on his part, with the consequence that he may be committed to a state institution. As to the area of adjudication of delinquency circumscribed by Gault, it does require that the process must meet the standards of due process. We believe that an implicit foundation for the holding in Gault is the conclusion that juvenile proceedings to declare a juvenile "delinquent" as a result of his own misconduct are at least sufficiently criminal in nature that the constitutional rights involving due process in criminal cases must be applied. The due process requirements spelled out in Gault do not pass upon the issue of whether or not the right to a jury trial is a fundamental part of that due process. The problem here is whether the right to a jury trial is an essential part of due process in the area of adjudication of delinquency outlined by Gault.

So far as present research indicates, since the Gault decision, three states have passed upon the issue of whether a juvenile has a constitutional right to a jury trial in juvenile court at the adjudicatory stage of the juvenile court process of determining delinquency. Two of these cases have denied such right and one has upheld it on the basis of a statutory interpretation.

Commonwealth v. Johnson, 211 Pa. Super. 62, 234 A.

2d 9 (Sept. 15, 1967), held that denial of a jury trial to a juvenile on charges of rape, assault with intent to ravish, assault and battery, and indecent assault was not violative of the juvenile's rights under the Sixth and Fourteenth Amendments to the Constitution of the United States. The court relied heavily on the fact that the United States Supreme Court had never held that the right to trial by jury was a fundamental part of due process imposed upon the states through the Fourteenth Amendment. The court also conceded that the change of the name of the offense from "rape" to "delinquency" did not of itself affect the constitutional right of the accused to a trial by jury.

Estes v. Superior Court, 73 Wash. 2d 272, 438 P. 2d 205 (March 5, 1968), held that jury trial in a juvenile delinquency proceeding was not a constitutional requisite. The Washington court relied upon the Johnson case and also concluded that Gault should not be considered as a mandate incorporating the right to a jury trial within the fundamental essentials of due process, and also reaffirmed its previous conclusion that the Washington constitutional requirements as to trial by jury were applicable only to criminal prosecutions, and that juvenile court proceedings should not be considered criminal.

Peyton v. Nord, 78 N. M. 717, 437 P. 2d 716 (Feb. 26, 1968), held that under the New Mexico juvenile court statute, a juvenile charged with violation of a state law is entitled to a trial by jury in juvenile court if there is no certification to district court and if the offense is one which would be triable by a jury if committed by an adult.

All of these cases were decided prior to Duncan v. Louisiana, 391 U. S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491, decided May 20, 1968.

In Duncan, for the first time, the Supreme Court held that the right to jury trial in serious criminal cases is a fundamental right, and hence must be recognized by

the states as a part of their obligation to extend due process of law to all persons within their jurisdiction. While Duncan avoids any clear-cut holding as to what will constitute a serious criminal case, it does indicate quite obviously that the dividing line, may depend upon the maximum possible time of imprisonment provided as a penalty. It also indicates that the present federal rule of 6 months may be the appropriate measure.

In re Whittington was disposed of on the same date on which Duncan was decided. Whittington involved the issues of the right to trial by jury and standards of proof in adjudications of juvenile delinquency. Because of an intervening order binding the juvenile over for trial as an adult, the Supreme Court did not pass on the issues. It did, however, vacate the judgment and remand the cause to the Ohio court for consideration in light of Gault. See In re Whittington, 391 U. S. 341, 88 S. Ct. 1507, 20 L. Ed. 2d 625 (May 20, 1968).

If Gault is ultimately interpreted as meaning that any juvenile court proceeding to determine "delinquency" is a "serious" case because the child might be subjected to the loss of his liberty for more than 6 months, then every adjudication of juvenile delinquency would give rise to a constitutional right to a jury trial. Some language in Gault might be so interpreted. "A proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution." In re Gault, *supra*, p. 36.

However, Gault did not impose the requirement of a jury trial as a part of due process in adjudications of delinquency. This omission might rest on two obvious facts. Duncan had not yet been decided, and, in Gault, the crime involved, if committed by an adult, could have resulted only in a fine of $5 to $50 or a jail sentence of not more than two months. It was, therefore, not a "serious" criminal case, and an adult would not have been entitled to a constitutional right to trial by jury,

even under Duncan. Therefore, Gault could also be interpreted as meaning that even though adjudications of delinquency are at least partially criminal in nature, a juvenile is only entitled to the same constitutional right to jury trial as an adult would be for the same actions in an adult criminal court.

The length of possible punishment may be an "objective" basis for dividing serious and petty crimes in the general criminal courts. There individual crimes are set out in dozens of variations and the punishments are applied to the specific acts constituting the individual crime. Under the Nebraska Juvenile Court Act, a "delinquent" is now defined as: "any child under the age of eighteen years who has violated any law of the state or any city or village ordinance." § 43-201, R. S. Supp., 1967. The complete range of disposition permitted by the Juvenile Court Act may be applied to the single category of "delinquent." A correlation between juvenile court and adult criminal court as to the constitutional right of trial by jury, based solely on possible length of "punishment," presents difficult alternatives. Faced with such alternatives, we see no present justifiable reason to declare that all proceedings to determine that a child is delinquent under the Juvenile Court Act are "serious criminal cases" giving rise to a constitutional right to trial by jury under the due process clause.

Four judges, a majority of this court, are of the opinion that a juvenile charged with violation of a state criminal law as the basis for an adjudication of delinquency is entitled to a constitutional right to a trial by jury in juvenile court if the offense is one which would give rise to a constitutional right to trial by jury if committed by an adult and triable in an adult criminal court. To the extent the provisions of section 43-206.03, R. S. Supp., 1967, are in conflict, we believe they are unconstitutional. This conclusion is also reinforced by the case of Nieves v. United States. 280 F. Supp. 994, decided March 5. 1968. This constitutional right, of course, may

be waived, although special problems may arise with respect to waiver. See In re Gault, *supra*.

Four judges are also of the opinion that a finding of delinquency, for misconduct which would be criminal if charged against an adult, is valid only when the acts of delinquency are proved beyond a reasonable doubt to have been committed by the juvenile charged. See In re Urbasek, 38 Ill. 2d 535, 232 N. E. 2d 716; United States v. Costanzo, 395 F. 2d 441 (4th Cir.). To the extent that those provisions of the Juvenile Court Act, section 43-206.03, R. S. Supp., 1967, incorporating a preponderance of the evidence standard for delinquency proceedings are in conflict, we also believe they are unconstitutional and void.

CARTER, J., joined by WHITE, C. J., and NEWTON, J.

This is an appeal from the denial of a writ of habeas corpus. The petitioner is a 17-year-old boy who sought a release from the custody of the county sheriff under an order committing him to the Boys' Training School at Kearney, Nebraska, as a juvenile delinquent. It is the contention of the petitioner that upon demand, which was made, he is entitled to a trial by jury and to have the issue of his delinquency determined under the rule in criminal cases requiring a finding of guilt beyond a reasonable doubt.

The first Juvenile Court Act was enacted in this state in 1905. The history of the act is set out in State v. McCoy, 145 Neb. 750, 18 N. W. 2d 101. Prior to 1963, the act and the amendments thereto did not provide for a trial by jury except where a delinquent minor child is charged with a crime. In 1963, the act was amended to provide in part: "(2) Hearings shall be conducted by the judge without a jury in an informal manner, applying the customary rules of evidence in use in civil trials without a jury in the district courts." § 43-206.03, R. S. Supp., 1967.

In a delinquency case such as the one before us in which a jury was demanded and denied, this court said:

"The act itself makes no provision for a trial by jury except where a delinquent child is charged with a crime. The complaint was intended to charge, and did charge, the boy with being a dependent, neglected and delinquent child. Dependent and neglected in this; that said Alton Laurie * * * has violated the laws of the state; * * * and was repeatedly guilty of operating a motor car in violation of law. It is evident the specific charges in the complaint of law violation were not made with the intention of charging him with crime, but to set forth and state the facts showing him to be a dependent, neglected and delinquent child. The statute defines dependent, neglected and delinquent children, and to bring the case within the statutory provision, it was necessary to make these allegations, and without such, or similar allegations, the petition would be subject to attack. It is not enough that the petition charge that the boy was a dependent, neglected and delinquent child, but it must go farther and set forth facts showing that he was such a child, and until such a petition was filed he would be uninformed of what he would have to meet. The petition in such cases must inform the defendant of the charge he is to meet, to enable him to prepare for his trial. And an examination of the petition brings us to the irresistible conclusion that the charge against the boy was that of delinquency. A commitment to the industrial school upon such a charge is not a conviction of a crime, or a commitment to a penal institution." Laurie v. State, 108 Neb. 239, 188 N. W. 110. In the foregoing case, Wisconsin Industrial School for Girls v. Clark County, 103 Wis. 651, 79 N. W. 422, is quoted with approval in part as follows: " 'The proceeding is not one according to the course of the common law in which the right of trial by jury is guaranteed, but a mere statutory proceeding for the accomplishment of the protection of the helpless, which object was accomplished before the Constitution without the enjoyment of a jury trial. There is no restraint upon the natural liberty of children contemplated

by such a law—none whatever; but rather the placing of them under the natural restraint, so far as practicable, that should be, but is not, exercised by parental authority. It is the mere conferring upon them that protection to which, under the circumstances, they are entitled as a matter of right. It is for their welfare and that of the community at large. The design is not punishment, nor the restraint imprisonment, any more than is the wholesome restraint which a parent exercises over his child. The severity in either case must necessarily be tempered to meet the necessities of the particular situation. There is no probability, in the proper administration of the law, of the child's liberty being unduly invaded. Every statute which is designed to give protection, care and training to children, as a needed substitute for parental authority and performance of parental duty, is but a recognition of the duty of the state, as the legitimate guardian and protector of children where other guardianship fails. No constitutional right is violated, but one of the most important duties which organized society owes to its helpless members is performed just in the measure that the law is framed with wisdom and is carefully administered.' " See, also, Wheeler v. Shoemake, 213 Miss. 374, 57 So. 2d 267. The foregoing holdings of this court have remained the law of this state to the present time.

The original pleading filed in the delinquency proceeding is labeled a petition and alleges that the petitioner in the present case is a delinquent child within section 43-201(4), R. S. Supp., 1967, in that he was in the possession of a forged, false, and counterfeited bank check. I point out that petitioner was not charged with a crime, he was not and could not be tried on a criminal charge, no punishment for a crime was or could be inflicted, and the presumption of innocence as to the commission of crime is still applicable to him. It is argued here that a finding of delinquency is in practicable effect a conviction for crime in that some persons have

so construed it in transactions in the market place. But there is no evidence that any court has placed any such controlling construction upon it. It cannot be logically argued that because some persons may incorrectly choose to treat the proceeding as criminal in nature it then has the effect of making it so and thus affords a basis of unconstitutionality.

The position of the members of the court who would reverse and remand place the Juvenile Court Act in an unconscionable situation even if amended to conform to their views. A delinquent child may be committed to the training school whether or not the evidence points toward the commission of a crime by the juvenile. In either event, the juvenile may be committed until his conduct has been adequately corrected or until he has been placed in a suitable environment, but in no event beyond the age of 21 years. In other words, the corrective process is the same whether or not the supporting evidence indicates that the commission of crime may be involved. In requiring a jury trial when demanded, if there is evidence that some criminal act may be involved, the real purpose of the Juvenile Court Act is destroyed. It tosses the juvenile into a trial by jury where he is tried for all intents and purposes as a criminal when this is one of the things the Juvenile Court Act purports to eliminate. Instead of a hearing in juvenile court largely in the procedure of a court of equity, he is given a formal trial before a jury where the main issue will be whether or not he has committed a crime. This defeats the main purpose of the Juvenile Court Act, broadcasts to the world the evidence of a crime with which he has never been charged, and reinstates the evils of trying young juveniles on the same basis as adult criminals.

The purpose of juvenile courts must be reiterated here to gain a proper conception of the problem before us. The past several decades have produced a complete change in attitude of the state toward its offending chil-

dren. The problem of the delinquent child is, in its social significance, of great importance for on its wise solution depends the future of our youth as responsible citizens. The present thinking is that the juvenile who has begun to go wrong, who is incorrigible, who has violated some law or ordinance, is to be taken in hand by the state through a juvenile court, under the doctrine of parens patriae, as a guardian because of the unwillingness or inability of his natural parents to guide him toward responsible citizenship. Legislation establishing juvenile courts and providing methods to deal with dependent, neglected, and delinquent children shows a modern solicitude of the law for the best interests of such children. The juvenile court is not a criminal court; it does not punish for crime. Its purpose is corrective and reformative, and its ultimate purpose by its procedures is to permit the juvenile judge to best guide and control juvenile wrongdoers, with more consideration for the future development than for their past shortcomings. The creation of such courts has been characterized as the most outstanding development in the administration of criminal justice since the signing of the Magna Carta. 31 Am. Jur., Juvenile Courts, Etc., §§ 2 and 5, pp. 296, 297.

It is contended by the petitioner that a contrary view is required by the case of In re Gault, 387 U. S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527, and the asserted judicial history of that case. It is in the consideration of this issue where I must part company with the petitioner's contention.

No fault can be found with the granting of the writ of habeas corpus for failure to comply with conventional due process, i.e., the insufficiency of the petition in charging delinquency, the failure to give notice and hearing, and matters of that nature. The issue here is whether or not juvenile acts which have been held constitutional in some 40 states in fact violate constitutional due process under the Fourteenth Amendment to the Constitution

of the United States. I concede that the provisions of state juvenile acts must be complied with in accordance with their terms. The issue here does not involve any alleged failures in this respect. It may be true, and it probably is, that errors have been made by juvenile courts, but this is a condemnation of personnel and not the procedures that would justify a holding of unconstitutionality. If error in administration is a basis of a holding of unconstitutionality there would be few statutes which would escape. But the right of review for the correction of errors exists in this state and adequately protects against the ruthless administration of the act which the Gault opinion asserts as existing. The Gault opinion attacks the statutory efforts to conceal the deviational behavior of wayward juveniles as being "more rhetoric than reality." It questions the trial before a juvenile judge in affording due process by stating that "the condition of being a boy does not justify a kangaroo court," an implied criticism of juvenile judges that is wholly unwarranted. In the Gault case, the petitioner was a 15-year-old boy. The opinion indicates that the primary ground in finding him to be delinquent was the use of vile and lewd statements over a telephone, a misdemeanor for which, if convicted, would carry a penalty of $5 to $50 fine or a jail sentence for not more than 2 months. It is then asserted that under the juvenile act he was committed to custody for a maximum of 6 years. The comparison is simply not true, unless he fails to accept correction and continues as an incorrigible juvenile. The opinion plainly states that the rights of an adult under a criminal charge exceed those of a juvenile delinquent, but here the juvenile was not charged with crime. It is completely overlooked, however, that the juvenile received many advantages because of his youth that the criminal juvenile or adult does not possess, which is the very purpose of the Juvenile Court Act. In fact, the requirement of a jury trial defeats the very purpose of the act.

But irrespective of the foregoing, the Gault case does not hold or even infer that a jury trial is essential to due process in a delinquency case, even where the supporting evidence points to criminal conduct on the part of the juvenile. The most that is said by Gault with reference to a jury trial being essential to due process in a delinquency case is the following: "From the inception of the juvenile court system, wide differences have been tolerated—indeed insisted upon—between the procedural rights accorded to adults and those of juveniles. In practically all jurisdictions, there are rights granted to adults which are withheld from juveniles. In addition to the specific problems involved in the present case, for example, it has been held that the juvenile is not entitled to bail, to indictment by grand jury, to a public trial or to trial by jury." This latter statement is supported by Kent v. United States, 383 U. S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84, wherein it is said: "Because the State is supposed to proceed in respect of the child as parens patriae and not as adversary, courts have relied on the premise that the proceedings are 'civil' in nature and not criminal, and have asserted that the child cannot complain of the deprivation of important rights available in criminal cases. It has been asserted that he can claim only the fundamental due process right to fair treatment. For example, it has been held that he is not entitled to bail; to indictment by grand jury; to a speedy and public trial; to trial by jury; to immunity against self-incrimination; to confrontation of his accusers; and in some jurisdictions * * * that he is not entitled to counsel. * * * This concern, however, does not induce us in this case to accept the invitation to rule that constitutional guaranties which would be applicable to adults charged with the serious offenses for which Kent was tried must be applied in juvenile court proceedings concerned with allegations of law violation. The Juvenile Court Act and the decisions of the United States Court of Appeals for the District of Columbia

Circuit provide an adequate basis for decision of this case, *and we go no further.*" (Italics supplied.)

There is no holding by the Supreme Court of the United States that due process requires a jury trial in a delinquency proceeding under a juvenile court act. Three state Supreme Courts have passed on the issue since Gault and Kent. Some reference is made to Duncan v. Louisiana, 391 U. S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491, but this case is a criminal appeal in which the question of delinquency under a juvenile court act is not involved. In Peyton v. Nord, 78 N. M. 717, 437 P. 2d 716 (1968), the court held that a jury trial was required under the provisions of the state statute, and is therefore not pertinent here.

In Commonwealth v. Johnson, 211 Pa. Super. 62, 234 A. 2d 9 (1967), in dealing with the very question, that court said: "In summary, we are in full agreement with the holding of the Supreme Court that the constitutional safeguards of the Fourteenth Amendment guaranteed to adults must similarly be accorded juveniles. It is inconceivable to us, however, that our highest Court attempted, through Gault, to undermine the basic philosophy, idealism and purposes of the juvenile court. We believe that the Supreme Court did not lose sight of the humane and beneficial elements of the juvenile court system; it did not ignore the need for each judge to determine the action appropriate in each individual case; it did not intend to convert the juvenile court into a criminal court for young people. Rather, we find that the Supreme Court recognized that juvenile courts, while acting within the constitutional guarantees of due process, must, nonetheless, retain their flexible procedures and techniques. The institution of jury trial in juvenile court, while not materially contributing to the fact-finding function of the court, would seriously limit the court's ability to function in this unique manner, and would result in a sterile procedure which could not vary to meet the needs of delinquent children. Accordingly,

we reject appellant's request for a jury trial."

In Estes v. Superior Court, 73 Wash. 2d 272, 438 P. 2d 205 (1968), the court, in declining to construe Gault as requiring a jury trial in a dependency case, said: "While recognizing that in the instant case the above-mentioned requirements were met, and further that Gault did not specifically determine that jury trials are required in juvenile proceedings, petitioner nevertheless argues that, under the reasoning of Gault, a juvenile accused of an act which could lead to his institutionalization is entitled to the same procedural and constitutional rights as an adult accused of a crime, which rights would include a jury trial. * * * We do not believe that the Supreme Court's opinion in Gault, supra, is to be considered as a mandate to abandon this beneficial concept of the juvenile court system. Rather, it is a direction that the juvenile be offered the benefits of an informal hearing at which rules of fairness and basic procedural rights are observed. Such results can be obtained without the formality of a jury trial. One of the substantial benefits of the juvenile process is a private, informal hearing conducted outside the presence of a jury."

Summarizing my position, the Supreme Court of the United States has never held that a jury trial is essential to due process in a delinquency proceeding under a juvenile court act. Two state Supreme Courts have held that a jury trial is not required in such cases and that Gault and Kent do not hold otherwise. Since 1905, when our first Juvenile Court Act was enacted, this court has consistently held to the constitutional validity of our Juvenile Court Act including the provisions for a non-jury trial. There is no case authority holding that a jury trial is a requirement of due process in a delinquency proceeding.

The purport of the petitioner's position is that a jury trial is required by the holdings of the Supreme Court of the United States. But that court has not so held. To hold that it has, under such circumstances, has the

effect of overruling the previous holdings of this court without making reference to them and without regard to the fact that the two state Supreme Courts passing on the issue since Gault have determined that the Gault case does not hold that a jury trial is required in a delinquency case under the due process clause of the Fourteenth Amendment to the federal Constitution. An opinon to the contrary could be supported only by its own rhetoric. Such a holding can be based only on the assumption that the United States Supreme Court will eventually hold that a jury trial in juvenile delinquency cases is required to afford due process. To this I do not subscribe since that court, with opportunities to do so before it, has declined to so hold. Guessing with what that court may or may not do affords no basis under the rule of federal judicial supremacy to hold an otherwise valid act invalid by no less authority than peering into a crystal ball. By this process, the Juvenile Court Act, a legislative act which has been characterized as the most outstanding improvement in the administering of the affairs of delinquent juveniles in the last century, is held, in effect, to be unconstitutional.

It is the fuction of this court to protect its own jurisdiction against encroachment. It is my firm opinion that this court ought not to yield up its own powers to the Supreme Court of the United States until such court has made a final and binding judgment that can be imposed on this court under the doctrine of judicial supremacy. If and when such a judgment is entered by the Supreme Court of the United States, this court ought and will alter its position to comply therewith however much it may disagree with its soundness. But in the absence of a holding of unconstitutionality under the federal Constitution, this court is not bound by the rule of judicial supremacy, nor should it be voluntarily accepted in view of our own statute and the mass of authorities in this and other states upholding its constitutional validity.

I am not so naive as not to recognize that Kent, Gault,

and Duncan point to the eventual destruction of the juvenile court acts existing in most of the states of the union. This conclusion is based on statements in those opinions to the effect that a finding of delinquency is in practicable effect a conviction for crime; the attempt to forego criminal prosecution in favor of a civil corrective process is said to be "more rhetoric than reality"; it is asserted that due process is not provided by stating that "the condition of being a boy does not justify a kangaroo court"; and that juveniles are denied rights in criminal cases that are afforded to adults. I submit that a close examination of the situation reveals that these assertions simply are not true. The Supreme Court of the United States appears to be pointing toward a declaration of the unconstitutionality of the beneficent provisions of most juvenile court statutes. It appears willing to ignore the consistent holdings of constitutionality by state and federal courts over the past few decades and thereby rejects all the logic and reasoning supporting these holdings. It appears to take the position that its wisdom in this area exceeds in quality all the judicial pronouncements before it in the field of juvenile delinquency. The fact that a judge is a member of the highest court of the nation or state is not, of itself, proof of infallibility of decision. It might be well for members of such courts, on occasion, to step down from their ivory towers and recall with some humility that they were at the time of their appointment better than average lawyers with little judicial experience, of which there are many, who knew a President or Governor. In drafting the Constitution of the United States, our forefathers did not provide the states with a practical means of combating misconstruction of the Constitution or the encroachment of federal authority upon the sovereign power of the states. As I have before stated, it is the duty of this court to defend its own jurisdiction. The power of the pen is the only remedy left to us. When and if a decision of the Supreme Court of

the United States holds the Juvenile Court Act of this state to be unconstitutional under the federal Constitution, I want to make it clear that I shall recognize the power of that court to do so under the doctrine of judicial supremacy, but with the reservation of the privilege to protest its right to do so. But I shall neither bend the knee nor bow the head on mere inferences, speculations, or probabilities as to what that court will eventually do. Clear and plain holdings of unconstitutionality alone require us to apply the doctrine of judicial supremacy to the holdings of the Supreme Court of the United States. Having these views that I deem applicable to the case at bar, I concur in the affirmance of the judgment of the trial court.

SPENCER, J., joined by SMITH, J.

I am impelled to suggest that Judge Carter's opinion too casually brushes aside the impact of In re Gault, 387 U. S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527, particularly when read in conjunction with Duncan v. Louisiana, 391 U. S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491, which defined a misdemeanor punishable by 2 years imprisonment as a serious crime requiring a jury trial.

It is true we have previously said that a finding of delinquency is not punishment for a crime. However, the United States Supreme Court has questioned this legalistic fiction where constitutional rights are directly presented. It is the substance and not the form which will control.

Petitioner, who was 17 years of age, was charged with being a juvenile delinquent because of an alleged violation of the criminal law. He was found delinquent and was committed to the Boys' Training School at Kearney, where he may be confined until he becomes 21, and from which before that time he may be transferred to the Nebraska Penal and Correctional Complex. Our law authorizes the court to commit a delinquent child to the custody of the Department of Public Institutions. § 43-210, R. S. Supp., 1967. If he had been a few months

older, or 18 rather than 17, he could not have been charged as a juvenile, and without question would have been entitled to all constitutional safeguards.

I concede that In re Gault, *supra,* did not specifically pass upon the right to a trial by jury in a juvenile case, but do suggest it does conclude that the doctrine of parens patriae, which for years has been invoked to justify fewer constitutional safeguards for children, must be discarded.

The following quotations from In re Gault, *supra,* indicate that the conclusion supported by a majority of the court is the only one possible under the circumstances:

"Mr. Justice Douglas said, 'Neither man nor child can be allowed to stand condemned by methods which flout constitutional requirements of due process of law.' To the same effect is Gallegos v. Colorado, 370 U. S. 49 (1962). Accordingly, while these cases relate only to restricted aspects of the subject, they unmistakably indicate that, whatever may be their precise impact, neither the Fourteenth Amendment nor the Bill of Rights is for adults alone. * * *

"* * * the highest motives and most enlightened impulses led to a peculiar system for juveniles, unknown to our law in any comparable context. The constitutional and theoretical basis for this peculiar system is —to say the least—debatable. * * *

"The juvenile offender is now classed as a 'delinquent.' * * * It is disconcerting, however, that this term has come to involve only slightly less stigma than the term 'criminal' applied to adults. * * *

"It is of no constitutional consequence—and of limited practical meaning—that the institution to which he is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a 'receiving home' or an 'industrial school' for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. His world becomes 'a build-

ing with white-washed walls, regimented routine and institutional laws * * *.' Instead of mother and father and sisters and brothers and friends and classmates, his world is peopled by guards, custodians, state employees, and 'delinquents' confined with him for anything from waywardness to rape and homicide. * * *

"* * * juvenile proceedings to determine 'delinquency,' which may lead to commitment to a state institution, must be regarded as 'criminal' for purposes of the privilege against self-incrimination. To hold otherwise would be to disregard substance because of the feeble enticement of the 'civil' label-of-convenience which has been attached to juvenile proceedings. Indeed, in over half of the States, there is not even assurance that the juvenile will be kept in separate institutions, apart from adult 'criminals.' In those States juveniles may be placed in or transferred to adult penal institutions after having been found 'delinquent' by a juvenile court. For this purpose, at least, commitment is a deprivation of liberty. It is incarceration against one's will, whether it is called 'criminal' or 'civil.' "

With a background of several years' experience in juvenile matters, I can appreciate the position of the many conscientious experts on juvenile problems who believe that it is to the best interests of the child that a public trial, with all it connotes, be avoided, and that the case of the juvenile be processed as informally as possible. Yet, I am persuaded that it is my duty to keep ever in mind that a child, as well as an adult, is entitled to all constitutional protections and that his rights cannot be determined by the criterion of what I may feel is best for him. The decision on the question of a waiver of his constitutional rights is a decision that must be made for him by his legal representative.