REQUESTED BY: Robert L. Tagg, Executive Director, Nebraska Commission on Law Enforcement and Criminal Justice
1. Whether the provisions of Neb.Rev.Stat. §83-4,125 (Reissue 1981) require application n of Nebraska's Minimum Jail Standards to facilities detaining juvenile status and nonstatus offenders.
1A. Nebraska's Minimum Jail Standards are not applicable to facilities created exclusively for the needs of juveniles subject to the jurisdiction of the separate juvenile courts and supervised pursuant to Neb.Rev.Stat. § 43-296
(Cum.Supp. 1982).
1B. Nebraska's Minimum Jail Standards are applicable to detention facilities whose primary function is to house adult offenders and adult pretrial detainees but in which juveniles may be held pending disposition of charges against them or to which juveniles not subject to the jurisdiction of the separate juvenile court may be sentenced.
 1.
Neb.Rev.Stat. § 83-4,125 (Reissue 1981) states in pertinent part: For the purposes of this act, criminal detention facility shall mean any institution operated by a political jurisdiction or a combination of jurisdictions for the careful keeping or rehabilitative needs of adult or juvenile criminal offenders or those persons being detained while awaiting disposition of charges against them. We have discovered no case law regarding this section, nor is the legislative history of this enactment of assistance in resolving this matter. However, the case law and statutes of this state have long recognized a significant distinction between juveniles charged with the commission of crimes in the criminal courts of this state and those juveniles, regardless of the nature of their conduct, who are made subject to the separate Juvenile Code. Neb.Rev.Stat. § § 43-245, et seq. (Cum.Supp. 1982). State ex rel. Miller v. Bryant, 94 Neb. 754, 144 N.W. 804 (1913), (the court recognized that an adjudication of delinquency is in no sense criminal, but only civil); DeBacker v. Brainard,183 Neb. 461, 61 N.W.2d 508 (1968) (the court also realized this distinction and applied it even where a juvenile was charged in a juvenile court with misconduct that would have been criminal if he were an adult).
In this context the phrase "juvenile criminal offenders" in § 83-4,125 takes on significance. Neb.Rev.Stat. § 83-4, seq. (Reissue 1981) do not define either the term "juvenile" or the term "juvenile criminal offender." Neb.Rev.Stat. § 43-245
(Cum.Supp. 1982) defines "juvenile" as "any person under the age of eighteen." The Juvenile Code was enacted to effectuate, among other items, the following:
To remove juveniles who are within sections 43-245 to43-2,129 from the criminal justice system whenever possible and to reduce the possibility of their committing future law violations through the provision of social and rehabilitative services to such juveniles and their families. Neb.Rev.Stat. § 43-246(3) (Cum.Supp. 1982).
Neb.Rev.Stat. § 43-251 (Cum.Supp. 1982) prohibits the preadjudication placement of a juvenile age thirteen years or under in any jail or police station. That same section further provides: "When a juvenile under the age of sixteen years shall be detained in any institution in which adults are sentenced, it shall be unlawful to permit such juvenile to have verbal, visual, or physical contact with such adults at any time." Under Neb.Rev.Stat. §43-286 (Cum.Supp. 1982) "no juvenile shall be confined in any jail as a disposition of the [juvenile] court."
A review of all of the foregoing leads us to the conclusion that the term "juvenile criminal offenders" in § 83-4,125 refers only to those persons under the age of eighteen years that are under the jurisdiction of this states' criminal courts and not subject to the jurisdiction of the separate juvenile courts.
Section 83-4,125 also includes within the definitional function of "criminal detention facility" the holding of "those persons being detained while awaiting disposition of charges against them." We assume this class of persons would include juveniles. However, we note that only under very limited circumstances may juveniles ever be housed in "jails." See, Neb.Rev.Stat. § 43-251,43-253 and 43-257 (Cum.Supp. 1982).
Therefore, it is our opinion that the term "criminal detention facility" in § 83-4,123 does not include facilities specifically created for the purpose of detaining or meeting the needs of juveniles subject to the jurisdiction of the separate juvenile courts and supervised by the Department of Social Services pursuant to Neb.Rev.Stat. § 43-296 (Cum.Supp. 1982). However, the term "criminal detention facility" does include those facilities which may hold juveniles subject to the jurisdiction of the criminal courts of this state, and those facilities whose primary function is to house adult offenders and adult pretrial detainees which may hold juveniles under the jurisdiction of the separate juvenile courts during preadjudication procedures.
QUESTION: 2.: Whether the provisions of Neb.Rev.Stat.
 § 83-4,125 (Reissue 1981) require application of Nebraska's Minimum Jail Standards to police station holding or interview rooms.
CONCLUSION: 2.: No.
 2.
Again, § 83-4,125 states: For the purposes of this act, criminal detention facility shall mean any institution operated by a political jurisdiction or a combination of jurisdictions for the careful keeping or rehabilitative needs of adult or juvenile criminal offenders or those persons being detained while awaiting disposition of charges against them. Insofar as evaluating the applicability of minimum jail standards to police station holding or interview rooms, we first note your description of the function of such rooms. We are informed that the rooms in question may be employed to hold arrestees for "short periods of time prior to actual booking."
Under § 83-4,125 a "criminal detention facility" is a facility employed to detain persons "while awaiting disposition of charges against them." Without case law or further statutory guidance, it is our opinion that facilities which solely hold arrestees for short periods of time prior to booking do not fall within the § 83-4,125
definition of a "criminal detention facility." Thus, such facilities are not subject to this states' minimum jail standards.
We note that this should be looked upon as a very narrow exception to the applicability of minimum jail standards, and we find pivotal to our opinion here the fact that we understand the arrestees here in question do not have "charges pending against them" at the time they are detained. If any charges should be pending against the arrestee when he is detained, minimum jail standards would be applicable to the facility holding said arrestee.
QUESTION: 3.: Are work release facilities maintained by political subdivisions within this state subject to minimum jail standards mandated by Neb.Rev.Stat. § 83-4,124 (Reissue 1981)?
CONCLUSION: 3.: Yes.
 3.
You next inquire whether work release facilities maintained by a political jurisdiction of this state are subject to minimum jail standards. We begin our analysis by noting that the declared purpose of § 83-4,124 et seq. is that "all criminal detention facilities in the state shall conform to certain minimum standards of construction, maintenance, and operation." Section 83-4,125 defines a "criminal detention facility" as "any institution operated by a political jurisdiction . . . for the careful keeping or rehabilitative needs of adult . . . offenders."
We understand that "work release facilities" would house convicted "adult offenders." We further understand among the purposes of a "work release facility" would be caring for the "rehabilitative needs" of such offenders. Under these circumstances, and in view of the language of § 83-4,125, we are of the opinion that this states' minimum jail standards would be applicable to work release facilities operated by a political jurisdiction within this state.
Sincerely,
ROBERT M. SPIRE Attorney General
J. Kirk Brown Assistant Attorney General